**Andrew J. McBARRON,**
**Plaintiff-Appellee,**

v.

**S & T INDUSTRIES, INC., Master Hourly Retirement Plan; and S & T Industries, Inc., Defendants-Appellants.**

No. 84–5299.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 13, 1985.

Decided Aug. 19, 1985.

John W. Bilby, Middleton & Reutlinger, April A. Cain, argued, Louisville, Ky., for defendants-appellants.

R. Michael Kelly, argued, Kelly & Albers, Louisville, Ky., for plaintiff-appellee.

Before ENGEL and KEITH, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

KEITH, Circuit Judge.

This is an appeal by an employer, S & T Industries, Inc. and by the employer's pension plan, the "Master Hourly Retirement Plan," from a ruling by the United States District Court for the Western District of Kentucky. The issue presented is whether a key portion of the retirement plan, Section 4.06(b), violates sections of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, which prevent an employee from forfeiting retirement benefits earned through an approved retirement plan. The employer contends that the employee, Andrew McBarron, was not entitled to disability retirement benefits under its pension plan, because he was receiving funds from another source. In addition, the employer asserts that to the extent the retirement plan confers *disability* benefits, it is an "employee welfare benefit plan" thus exempt from the anti-forfei-

ture provisions of ERISA. Mr. McBarron relies on Section 1003(b)(3) of ERISA, which deals with disability plans that are totally exempt from ERISA to contend that the retirement benefits in question are not forfeitable because the retirement plan here is not "maintained *solely* for the purpose of complying with applicable Workmen's Compensation laws or unemployment compensation or disability laws." 29 U.S.C. 1003(b)(3). The district court held for plaintiff McBarron. For the reasons stated below, we reverse and remand.

### FACTS

Plaintiff, Andrew J. McBarron, was an employee of the co-defendant S & T Industries and was a qualified, vested participant in the co-defendant S & T Industries, Inc. Master Hourly Retirement Plan. McBarron left his employment in June 1979 due to a declared physical disability. On August 3, 1981, plaintiff was awarded Workmen's Compensation benefits for a work-related disability. The award required S & T Industries to pay $6.97 per week for five percent occupational disability and the workmen's compensation fund to pay $6.98 per week for a total of $13.95 per week. Although he was totally disabled, McBarron received only a five percent Workmen's Compensation award, because only five percent of his injury was found to be work related.

Plaintiff subsequently applied for disability benefits of $203.00 per month under the "Master Hourly Retirement Plan." Plaintiff's claim was denied because he was receiving Workmen's Compensation. The company based the denial on Section 4.06(b) of the Retirement Plan, which provides:

*If a member is entitled to disability benefits from another employer-sponsored program or from workmen's compensation, he shall not be entitled to benefits from this plan unless and until benefits from such other program cease; however, such period of deferral of benefits from the plan shall not extend beyond the member's normal retirement date.* At the earlier of the

cessation date of such other benefits and the member's normal retirement date, the disabled member shall be entitled to a monthly retirement income which shall be equal to his accrued benefit as of his date of disablement. (emphasis added)

Plaintiff subsequently instituted this action in the district court on January 31, 1983, seeking recovery of disability benefits under the employer sponsored disability plan which was included as part of the comprehensive pension plan—the "Master Hourly Retirement Plan". Plaintiff filed a motion for summary judgment alleging that Section 4.06(b) violated ERISA's anti-forfeiture provisions and was therefore unenforceable. Defendant, S & T Industries, countered with its own motion for summary judgment, stating that the disability plan is an "employee welfare benefit plan" rather than a retirement plan as contemplated by ERISA and as such is expressly exempted from ERISA's non-forfeiture provisions.

On January 13, 1984, the district court granted a partial summary judgment for both sides. Specifically, the court held that monthly disability retirement benefits could not be suspended or forfeited. The court also held that the monthly payments due pursuant to the plan could be offset by an amount equal to the employer's contribution to the monthly Workmen's Compensation benefits. Thus, plaintiff was awarded monthly disability benefits of $203.00 per month subject to a credit of $6.97 per week for workmen's compensation benefits received from the employer. On March 3, 1984 the judgment was amended to include the monthly disability payment offset by the Workmen's Compensation benefits dating from the date of disability, June 1979 to the date of the original judgment. These payments were to be paid until the earlier of plaintiff attaining normal retirement age or the cessation of plaintiff's Workmen's Compensation benefits; at which time plaintiff would be entitled to full monthly retirement benefits equal to his accrued benefits as of the date of disablement.

## The Disability Portion of the Master Hourly Retirement Plan Is An Employee Welfare Benefit Plan

The broad statutory purpose of ERISA is to protect the retirement funds accumulated for the benefit of employees. The anti-forfeiture provisions of ERISA are meant to protect and prevent the proceeds of retirement funds from being diverted for another purpose without first being presented to the intended beneficiaries. The basic non-forfeiture provision states that "(a) Each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age ..." 29 U.S.C. § 1053(a). The basic non-forfeiture provision clearly deals with employer sponsored pension plans that provide retirement benefits to employees who have reached an established retirement age.

Pursuant to ERISA, disability and other types of non-retirement plans, including those that are sub-sections of comprehensive pension plans, are exempt from the non-forfeiture provisions of the act. The non-forfeiture provisions "apply to any employee benefit plan described in Section 1003(a) of this title [of ERISA] (and not exempted under Section 1003(b) of this title) other than—(1) an employee welfare benefit plan." 29 U.S.C. § 1051(1). An employee welfare benefit plan is defined by ERISA as follows:

> [A]ny plan, fund, or program which was heretofore or is hereafter established or maintained by employer or by an employee organization, or by both, *to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise,* (A) medical, surgical, or hospital care or benefits, or *benefits in the event of* sickness, accident, *disability,* death or unemployment, or vacation benefits....

29 U.S.C. § 1002(1) (emphasis added). Since the plan in question provides employees with "benefits in the event of ... disability," it is clearly an "employee welfare benefit plan" as contemplated by ERISA. By stating that a plan is exempt from non-forfeiture provisions *to the extent* that it provides disability benefits, the definition establishes that ERISA recognizes employee welfare benefit plans whether they exist independently or as subsections of comprehensive retirement plans. Thus, Section 4.06 of the Master Hourly Retirement Plan is clearly an employee welfare benefit plan pursuant to ERISA.

## Disability Benefits Are Not Subject to the Anti-Forfeiture Provisions of ERISA

It is an elementary rule of statutory construction that we initially look to the plain language of the statute to determine the meaning of legislation. 2A Sutherland Statutory Construction § 46.01 (4th Ed.1984). The plain language of ERISA clearly allows the benefits in question to be forfeited. The plan here is obviously within the purview of the definition set out by Section 1002(1) and Section 1051 clearly exempts such plans from the non-forfeiture provisions of ERISA. In contending that the benefits are not forfeitable, plaintiff relies on *Shaw v. Delta Airlines,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) and Section 1003(b)(3) of ERISA which deals with disability plans that are totally exempt from the statutory requirements. Section 1003(b)(3) states that "(b) The provisions of this subchapter shall not apply to any employee benefit plan if—... (3) such plan is maintained *solely* for the purpose of complying with applicable workmen's compensation laws or unemployment compensation or disability laws." 29 U.S.C. 1003(b)(3) (emphasis added). Since the plan in question is not maintained solely for the purposes enunciated in Section 1003(b)(3), it is clear that plaintiff's argument is of no consequence here.

Defendants do not contend that the plan is totally exempt from ERISA's coverage or that the disability provision can be separated from the retirement plan and interpreted separately. To the contrary, the employer admits that its plan is "an em-

ployee benefit plan" and that its disability plan must comply with ERISA. Defendant does not claim that its plan like those subject to Section 1003(b)(3) "is maintained *solely* for the purpose of complying with applicable Workmen's Compensation laws or unemployment compensation or disability laws." Therefore, it is our view that *Shaw v. Delta Airlines,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), relied upon by plaintiff is inapplicable to the case at bar because it involves the interpretation of Section 1003(b)(3) of ERISA.

Defendant's disability plan, while *not* totally exempt from ERISA's coverage under Section 1003(b)(3) *is nonetheless specifically excluded only* from ERISA's *anti-forfeiture* provisions by the express wording of 29 U.S.C. §§ 1002(1) and 1051(1). It is important to note the distinction between the language used in 29 U.S.C. § 1003(b)(3), which *totally* exempts certain disability plans from ERISA and 29 U.S.C. §§ 1002(1) and 1051(1), which very narrowly exclude welfare benefit plans only from the anti-forfeiture provisions of ERISA. Plaintiff is correct in noting, as did the court in the *Shaw,* that in order for a disability plan to be *totally* exempt from ERISA, it must be maintained *"solely* for the purpose of complying with ... disability insurance laws." 29 U.S.C. § 1003(b)(3). To the contrary, Section 1051 provides that a plan which is admittedly subject to ERISA's coverage nonetheless has a limited exclusion from ERISA's anti-forfeiture provisions, 29 U.S.C. § 1051, to the extent that it is an "employee welfare benefit plan."

Unlike Section 1003(b)(3), Section 1002(1) does not state that a plan must be maintained "solely" to provide welfare benefits to fall within its scope. The wording of Section 1002(1) seems to confirm defendants' position that the Master Hourly Retirement Plan, while not "solely" a disability plan, is an "employee welfare benefit plan" *to the extent that* it provides welfare-type benefits. In our view, the words "to the extent that" rather than "solely" clearly indicate that Congress intended to allow any plan or part of a plan having disability provisions to be considered an "employee welfare benefit plan," and thus be exempt from the anti-forfeiture provisions.

Though the plan in the instant case exists as a subsection of a comprehensive retirement plan, we are of the view that defendants' reliance on decisions that deal with only pure welfare benefit plans is acceptable because all such cases help to establish the limits that ERISA sets on employee welfare benefit plans. *See, e.g., Gutting v. Falstaff Brewing Corp.,* 541 F.Supp. 345 (E.D.Mo.1982). In *Gutting* only a welfare benefit plan was at issue, and the court held that there was no prohibition under ERISA for forfeiture of benefits under employee welfare benefit plans. The district court below distinguished the instant case from *Gutting* by noting that the appellant's plan is labelled "Master Hourly Retirement Plan" and contains elements which are common to both pension plans and welfare benefit plans. Since the statute recognizes welfare benefit plans whether independent or as part of a comprehensive plan, this difference is inconsequential.

Apparently due to the "mixed" nature of the plan, the court below seemed determined to produce an equitable solution. Thus, the court rendered a judgment ordering defendant to pay the normal amount of benefits reduced by Workmen's Compensation payments that plaintiff was receiving from his employer. In reaching this decision, the district court relied on *Alessi v. Raybestos-Manhattan,* 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981), which held that an employer's retirement benefits may be legitimately reduced or offset by an amount equal to Workmen's Compensation awards for which the individual is eligible. In *Alessi,* employers merely reduced the amount of benefits which had vested in the pensioners by the amount of Workmen's Compensation paid to the pensioners, but did not eliminate any payments under the pension plan while the Workmen's Compensation benefits were being paid.

While acknowledging that *Alessi* did not address whether disability benefits were subject to ERISA's anti-forfeiture provisions, the district court stated that *Alessi* pointed to a fair reading of what is permissible and what is not permissible in the instant case. According to the district court, the *Alessi* Court reached a fair result by giving the employer a reduction in the amount of pension benefits payable by virtue of the payment of Workmen's Compensation benefits which had been purchased by the employer through an insurance company. In our view the district court erred in relying on *Alessi* as the basis of its judgment.

■ *Alessi* is of very limited use in the instant case. *Alessi* "does not expressly reach the point" of whether disability benefits even fall within ERISA's anti-forfeiture provisions. The case involved normal retirement benefits, which undisputedly fell within ERISA's provisions prohibiting forfeiture of vested benefits. The *Alessi* decision can be limited to the proposition that pension benefits which are clearly vested and nonforfeitable under ERISA may be reduced by an amount equal to Workmen's Compensation benefits received by the retiree. Furthermore, in *Alessi*, the plaintiffs had reached their normal retirement age as they were receiving regular retirement benefits. In the instant case, plaintiff has sued to receive disability benefits prior to his normal retirement date, and as such is not within the scope of ERISA's provisions relating to forfeiture. Because S & T Industries' disability plan is not subject to ERISA's non-forfeiture provision, *Alessi* does not apply to the facts before the court.

■ In our view, ERISA does not give an employee any nonforfeitable right to early retirement benefits. The express wording of the statute makes this clear: "Each pension plan shall provide that an employee's right to *normal* retirement benefits is nonforfeitable upon the attainment of *normal retirement age* ..." 29 U.S.C. § 1053(a) (emphasis added).

■ Even assuming that plaintiff had a vested right to his disability benefits, under ERISA payments of such benefits may be deferred until plaintiff reaches normal retirement age. Before plaintiff's normal retirement date, S & T Industries has the absolute right to enforce its contract with plaintiff. In this case, enforcement of the contract results in denial of disability benefits until plaintiff stops receiving Workmen's Compensation funds. Furthermore because Section 4.06(a) of the plan states that any waiver of disability benefits would cease upon plaintiffs attainment of normal retirement age, the plan is in complete compliance with ERISA even if it is not, as appellant contends, an "employee welfare benefit plan." *See, e.g., Fine v. Smet*, 699 F.2d 1091 (11th Cir.1983) (holding that ERISA imposes no obligation on a plan to pay benefits before an employee reaches normal retirement age).

### The District Court Ruling May Endanger the Stability of the Retirement Fund

Assuming plaintiff is entitled to the disability benefits he claims under the plan, the practical effect of the district court ruling is to simply prevent employees from receiving the benefit of two separate employer-sponsored plans. After the ruling below, the employer is responsible for no more than the $203.00 per month it would owe McBarron if he were claiming normal retirement benefits under the plan. However, other interpretations of the plan suggest that the employer may be legitimately concerned about the stability of the retirement fund.

■ The Workmen's Compensation board awarded benefits to the plaintiff based on a finding of five percent occupational disability—that is only five percent of Mr. McBarron's disability injuries were found to be work related. Though Workmen's Compensation was the reason stated by the employer for its initial refusal of benefits, it is possible that the underlying reason may well have been the very limited contribution of work-related activity to

plaintiff's disability. The plan does not explicitly state that the fund is only intended for employees whose disability is work related. However, by specifically excluding recipients of workmen's compensation in addition to those who have the right to benefits from other employer-sponsored programs, the drafters of the plan could only have been contemplating excluding those whose disabling injuries are only partially work related from participation in the disability portion of the plan. This seems to be the case because, from the record before us, awarding benefits for partially work-related injuries seems to be the only distinguishable characteristic of workmen's compensation. Thus, in light of the explicit exclusion of workmen's compensation recipients, it seems plausible that the fund is only intended to help employees whose disabling injuries are principally or totally work related.

In contrast, it is also possible that by not explicitly excluding those whose disabling injuries are not work related and by requiring employees to serve ten years before receiving disability benefits the drafters could have intended the plan to serve all disabled employees who had been credited with ten years of employment regardless of whether their injuries were primarily work-related. If the latter was intended then the district court's view of the plan as a supplement to workmen's compensation is correct and the fund should take care of employees, like Mr. McBarron, whose disability is only partially work-related. However, if the other scenario is correct, then employees like Mr. McBarron are not entitled to disability benefits.

Though the district court's decision might seem proper in this case, it may be better for the sake of all plan participants to insure that only intended beneficiaries receive funds. By making the pension plan liable for unintended beneficiaries, the district court ruling could damage the retirement fund by forcing it to pay for disabled employees for whom the drafters did not intend the plan to be responsible and whose costs the fund is not designed to meet. In our view, both of the above interpretations

are plausible explanations for the drafters' wording of section 4.06. The trier of fact must determine the precise meaning of section 4.06 in the context of the entire plan. If it was the drafters' intent to create a fund sufficient to aid all disabled employees with ten years service, then we may assume that the fund is adequate. If the drafters' intent was otherwise, use of the fund to aid unintended beneficiaries could deplete the fund ahead of schedule and injure the intended beneficiaries. Thus, the availability of funds to pay employees disabled due to nonwork related injuries depends on the characterization of the plan. We are not in a position to make an accurate determination of the plan. This must be done by the trier of fact.

Accordingly, we reverse and remand this case to the district court for a determination of the intent of the drafters' of the Master Hourly Retirement Plan and for further proceedings consistent with this opinion.

ENGEL, Circuit Judge, concurring.

I concur fully in the majority's finding that the disability benefit portion of the S & T Industries Master Hour Retirement Plan is an employee welfare benefit plan and, therefore, not subject to ERISA's anti-forfeiture provisions. As I believe that the language of section 4.06 of the plan is ambiguous in the context of the facts in this case, I also agree that the case should be remanded for a determination of the parties' intent. However, I disagree with the majority's discussion of the parties' probable intent.

I would first look to the four corners of the plan to construe the questioned language. Section 4.06, when read in its entirety, basically gives permanently and totally disabled plan participants with at least ten years of service the right to receive disability benefits equal to the retirement benefits which they have accrued at the date of disablement. However, under section 4.06(b), "[i]f a Member is entitled to disability benefits from another Employer-

sponsored program or from Workmen's Compensation, he shall not be entitled to benefits from this Plan unless and until benefits from such other program cease."

The majority suggests that under section 4.06(b), the disability fund was intended only for employees whose disability is work-related. Yet, if section 4.06(b) of appellants' plan is construed to allow disability benefits only when injuries are work-related, the disability portion of the plan would be of little benefit to any employees. Workers with non-work-related injuries would be barred from an award under the plan because their disability was not employment-related, and workers with employment-related injuries would be barred under section 4.06(b) because they are entitled to worker's compensation. A more reasonable construction of the plan would be that it was intended to protect long-term employees who suffered either an employment-related or a non-employment-related total, permanent disability. Under that construction, if the employees' injury were work-related, he would receive worker's compensation; if not, he would receive benefits under the plan. I, therefore, disagree with the majority's position on this issue and conclude that the disability benefit portion of the fund was primarily intended to assist employees whose disabling injuries are not work-related.

Proceeding on that basis, I believe that section 4.06(b) was included in the plan only to prohibit double-dipping by totally disabled employees with entirely work-related injuries; that is, it was designed to prevent such employees from claiming an entitlement to full benefits under both the plan and worker's compensation. I find it unlikely that in drafting section 4.06(b) the parties contemplated the specific situation at issue here. However, if they had considered this circumstance in which the participant's disability is only partially work-related, it seems improbable that they would have placed such an employee in a totally inferior position, making him unable to enjoy the benefits which he would have received had his disability been either entirely work-related or entirely non-work-related.

Therefore, I would construe section 4.06(b) as providing that where, as here, an employee is entitled to worker's compensation only to the extent that his disability was employment-related (here five percent) and where that employee did not receive the remaining worker's compensation to which he would be otherwise entitled (here ninety-five percent), he is only "entitled" to the five percent of worker's compensation he received. Therefore, he should be disqualified under the plan only to the extent of that five percent and should receive ninety-five percent of the plan's normal disability benefits. This construction would accord with the plan's obvious intent as suggested by the use of the word "entitled" in section 4.06(b), but would avoid the double-dipping which the parties wished to prohibit.

Yet, if the proof shows that the parties intended to disallow all disability benefits otherwise payable under the plan when a qualified plan member is entitled to any worker's compensation benefits, we must enforce that intent. As the majority points out, the stability of a plan which was funded to pay disability benefits only when a participant is entitled to no worker's compensation would be endangered by a decision requiring such unanticipated payments. We must consider any "threat to the stability of a pension plan itself by the impact of [such a] decision upon the integrity of the fund and its capability of providing real benefits to the workers." *Utility Workers, Etc. v. Consumers Power Co.*, 637 F.2d 1082, 1093 (6th Cir.) (Engel, J., dissenting), *vacated and remanded,* 451 U.S. 1014, 101 S.Ct. 3000, 69 L.Ed.2d 385 (1981). On remand, the district court should, therefore, consider and enforce the parties' intent.