7 F.3d 232
 Pens. Plan Guide P 23886J
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Elizabeth ALLEN, Plaintiff-Appellant,
v.
FORD MOTOR COMPANY and Ford Motor Company Savings and Stock
Investment Plan Committee, Defendants-Appellees.
 No. 92-3131.
 United States Court of Appeals, Sixth Circuit.
 Sept. 17, 1993.
 
 Before: KENNEDY, MARTIN, and SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff, Elizabeth Allen, appeals the district court's order granting summary judgment in favor of Ford Motor Company and Ford Motor Company Savings and Stock Investment Plan Committee (collectively "defendant") in this action filed against defendant for failing to provide accurate information regarding the cost basis of stock distributed to her from her former husband's qualified employee benefit plan. Plaintiff charges that the inaccurate information caused her to determine incorrectly the tax consequences of her subsequent actions, resulting in a payment of unexpected income and capital gain taxes. She claims damages equal to the amount of the income and capital gain taxes paid and the lost investment value of those payments.
 
 
 2
 The district court held that although defendant breached its fiduciary duty under the Employee Retirement Income Security Act ("ERISA")[1] to provide plaintiff with accurate information, defendant's actions did not cause the damages claimed. We agree that defendant breached its fiduciary duty to plaintiff, and for reasons different than those relied upon by the district court, we also agree that defendant did not cause plaintiff's claimed injuries. Accordingly, finding that there are no genuine issues of material fact and that defendant is entitled to judgment as a matter of law, we AFFIRM.
 
 I.
 
 3
 Plaintiff's former husband has been employed with Ford Motor Company since 1964, and during his employment he has participated in the Ford Motor Company Savings and Stock Investment Plan (the "plan"). Under the plan, employees can contribute part of their after-tax salary toward the purchase of company stock. The company, in turn, makes matching contributions.
 
 
 4
 In February 1988, plaintiff divorced her husband. Pursuant to the divorce order,[2] she was designated an alternate payee and a beneficiary of the plan, and was therefore entitled to half (4,652) of the shares in her former husband's stock accounts. Later, in November 1988, plaintiff sought to withdraw her interest in the plan. To that end, she filed a "Request for Withdrawal" with defendant, seeking her full entitlement of stock in four sub-accounts: (1) the employee savings account, which includes stock purchased with employee contributions; (2) the company matching account, which includes stock purchased with company matching contributions; (3) an account collecting stock purchased with dividends from the employee savings account; and (4) an account collecting stock purchased with dividends from the company matching account. Distributions from most of the accounts are subject to both income and capital gain taxes.
 
 
 5
 Income tax liability depends on the way in which shares of stock are purchased. Because the stock in the employee savings account is purchased with after-tax earnings, the distribution of these shares is not a taxable event. See 26 C.F.R. § 1.402(a)-1. In contrast, company contributions to the matching account and property in dividend accounts are considered pre-tax earnings. Thus, the distribution of stocks from these accounts is a taxable event. See 26 C.F.R. § 1.402(a)-1(a)(1)(i).
 
 
 6
 Liability for a capital gain tax is a function of the cost basis associated with the various stocks. Calculating the basis of the shares, in turn, depends on the account from which the stocks are distributed. Stock purchased with employee contributions acquires a basis equal to the purchase price of the stock.[3] In contrast, stocks in the company matching and divided accounts acquire a cost basis equal to the fair market value of the stock on the date they are distributed. Regardless of when the cost basis attaches to the stocks in the various accounts, a capital gain tax is not incurred until the stock is actually sold, for that is the time when any net appreciation in the value of the stock is realized. See 26 C.F.R. § 1.402(a)-1(b)(1)(i). As a practical matter, if the stocks from company matching and/or dividend accounts are sold on or shortly after the date of distribution, any resulting capital gain tax would probably be modest--because there would be insufficient time between the date of distribution (when the stocks acquire their basis at fair market value) and the date of sale for the stocks to appreciate in value. However, Congress has provided distributees with certain rollover options. Thus, whatever tax liability attaches to such stocks, it can be avoided by rolling over the stocks, or in some instances the proceeds of the sale of the stocks, into certain qualifying retirement plans.[4]
 
 
 7
 In this case, in an effort to assess the tax implications of her distribution, plaintiff, through her attorney and accountant, contacted Robert Cialone, supervisor of defendant's plan administration department. Specifically, plaintiff wanted to know the cost basis of the shares being distributed to her. Cialone reported that because all of the distributed shares would be coming from company matching accounts, the cost basis would be equal to the fair market value on the date of distribution. With this information, plaintiff reasoned that selling the stock would probably not generate much of a capital gain because she planned to sell the stock on or near the date of distribution.
 
 
 8
 On January 30, 1989, the stock was distributed to plaintiff at a fair market value of $53.25 per share. Approximately three weeks later, defendant sent a distribution summary to plaintiff, indicating that it had distributed stock from all four sub-accounts and that the cost basis issued on stocks from the employee account was $9.884 per share.[5] The information in the summary contradicted Cialone's previous representation that all the stock would be distributed to plaintiff from the company accounts at a cost basis equivalent to their fair market value, which on January 30th was $53.25.
 
 
 9
 Concerned over the conflicting information she had received from defendant and over the specter of realizing a substantial capital gain, plaintiff's attorney and accountant again contacted Cialone, who informed them that the $53.25 figure was correct and that they should disregard the figures in the distribution summary. Based upon Cialone's assurances, plaintiff soon thereafter sold her stock at the then current market price of $53.68, generating proceeds of $249,725.40 and realizing, she thought, only a very modest capital gain.[6] In April of 1989, defendant sent another statement to plaintiff regarding the tax consequences of the distribution. The statement again confirmed that all of the shares were distributed from company matching accounts. The statement also indicated that because the distribution came from pre-tax earnings, the total amount of the distribution was subject to an income tax and was reportable to the I.R.S.
 
 
 10
 More than seven months after the distribution, Cialone reported to plaintiff that he had made an error: all of the shares were not distributed from company matching accounts as previously stated; instead, 2793 shares were distributed from company matching and dividend accounts and the remainder, 1859 shares, were distributed from the employee savings account. Thus, the previously reported cost basis of $53.25 was not applicable to the 1859 shares from the employee account. Instead, as reported by Cialone in September 1989, these shares had a cost basis of approximately nine dollars per share, causing plaintiff to realize an unexpected capital gain of $81,147. Consequently, for the 1989 tax year, plaintiff paid $29,590 in income taxes on the shares distributed from the company matching account and dividend accounts and $25,297 in capital gain taxes on the shares distributed from the employee account and sold in February 1989. This lawsuit followed.
 
 II.
 
 11
 We review the district court's grant of summary judgment de novo. Faughender v. City of North Olmsted, 927 F.2d 909, 911 (6th Cir.1991). For plaintiff to prevail, she must show that defendant owed a duty to provide her accurate information, that such duty was breached and that this breached caused the damages she seeks to recover. For defendant to prevail, it need only show that one of these three elements is absent.
 
 
 12
 We agree with the district court's determination that defendant, through its agent Cialone, owed a common-law fiduciary duty under ERISA to accurately disclose material information to plaintiff. Central States, Southeast & Southwest Area Pension Fund v. Central Transport, Inc., 472 U.S. 559, 570 (1985) ("rather than explicitly enumerate all of the ... duties [of ERISA fiduciaries], Congress invoked the common law of trusts to define the general scope of their ... responsibilities"). The information requested in this case was material to plaintiff's ability manage her affairs. The information provided was indisputably false. Thus, the duty owed had been breached. As this court said in Warren v. Society National Bank, 905 F.2d 975, 982 (6th Cir.1990), cert. denied, 111 S.Ct. 2256 (1991), "the carefully integrated civil enforcement provisions of [29 U.S.C. s] 1132(a)(3) should be held to provide an avenue of redress" for defendant's breach.
 
 
 13
 Though defendant's breach clearly appears in the record, plaintiff must also prove that this breach caused the damages she seeks to recover. She contends that, but for defendant's breach, she would have rolled-over the proceeds of the sale of the stock into her retirement account, thereby deferring both her income and capital gains tax liability. As explained below, even had defendant provided accurate information and plaintiff had acted as she now claims she would have acted, those actions would not have deferred her tax liability and, therefore, defendant's breach did not cause her damages.
 
 A.
 
 14
 Under the Tax Code, certain individuals can escape immediate taxation on distributions of property from pension plans if they transfer, or "rollover," the property, or in some instances the proceeds from the sale of the property, to a qualifying retirement plan. Various provisions of the Code permit such rollovers. See e.g., 26 U.S.C. §§ 402(a)(5), (6)(F), and (7) (1988 & Supp. III 1991) (current versions at 26 U.S.C.A. § 402(c)(1), (e)(1), and (c)(9) (West Supp.1993), respectively).[7] Paragraph (6)(F) which applies to plaintiff as a former spouse[8] cross-references paragraph (5)(A). Thus, we must decide whether the option, available under paragraph (5)(A), of rolling over the proceeds of a distribution is also available to former spouses, such as plaintiff, under paragraph (6)(F). There are no binding authorities on this question; we are therefore presented with an issue of first impression.
 
 
 15
 Our inquiry begins with the language of the statute itself. United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241 (1989) (citing Landreth Timber Co. v. Landreth, 471 U.S. 681, 685 (1985)); Bradley v. Austin, 841 F.2d 1288, 1293 (6th Cir.1988) (citing McBarron v. S & T Industries, Inc., 771 F.2d 94, 97 (6th Cir.1985)). If the statutory language is ambiguous, we look to the legislative history for guidance. Blum v. Stenson, 465 U.S. 886, 896 (1984). Conversely, if the statutory language is unambiguous, the plain meaning of the legislation is conclusive, "except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." Ron Pair Enterprises, 489 U.S. at 242 (internal quotations omitted).
 
 
 16
 Under paragraph (5)(A),[9] an employee may rollover a distribution from a pension plan only after satisfying three qualifying conditions. First, the employee must receive a distribution of property from a qualified trust. Second, the employee must rollover the property distributed into an eligible retirement plan. Third, and most germane to this case, if the distribution consists of property other than cash, then the property itself must be rolled over.
 
 
 17
 This third qualifying condition is expanded by a special rollover rule found at paragraph (6)(D)(i). Under paragraph (6)(D)(i), the proceeds of the sale of property distributed may be rolled over in lieu of the property itself.[10] Thus, pursuant to paragraph (6)(D)(i), the third qualifying condition under paragraph (5)(A) may be satisfied by rolling over either the property distributed or the proceeds from the sale of such property. Once all three qualifying conditions under paragraph (5)(A) have been met, the taxes on the distribution are deferred until a later date.[11]
 
 
 18
 Paragraph (6)(F),[12] which applies to former spouses, is similarly structured. Like paragraph (5)(A), paragraph (6)(F) imposes three conditions precedent to tax deferment for former spouses, and these three conditions parallel those contained in paragraph (5)(A). First, the former spouse must receive a distribution pursuant to a qualified domestic relations order. Second, the former spouse must rollover the property to an enumerated retirement plan. Third, like paragraph (5)(A), if the property distributed is other than cash, the property itself must be rolled over. Upon satisfaction of the three qualifying conditions, paragraph (6)(F) provides that "the portion of the distribution so transferred shall be treated as a distribution described in paragraph (5) [i.e., shall receive tax deferment]."
 
 
 19
 The specific issue that confronts us is whether a former spouse under paragraph (6)(F), like an employee under paragraph (5)(A), may rollover the proceeds from the sale of distributed property. The issue is important in this case because plaintiff sold the distributed shares of stock and now complains that defendant's breach caused her to forego her rollover option. Her claim turns on whether or not she had a rollover option after selling the stock. After examining the relevant statutory scheme, we are convinced that plaintiff, as a former spouse, could not rollover the proceeds from the sale of the property distributed to her.
 
 
 20
 The plain language of section 402 provides that a former spouse, unlike an employee or a surviving spouse, may not rollover the proceeds from the sale of distributed property. First, paragraph (6)(F) mandates the tax deferment specified in paragraph (5)(A) only after the former spouse satisfies all three conditions listed in paragraph (6)(F), one of which is that non-cash property be rolled over into a qualifying retirement account. Thus, by its own explicit terms paragraph (6)(F) requires that the property itself be rolled over. In addition, the special rollover rule found at section 402(a)(6)(D), permitting the transfer of proceeds, applies by its terms only to paragraphs (5) and (7), which concern rollovers by employees and surviving spouses, respectively. The special rule does not refer to rollovers by former spouses under paragraph (6)(F). In sum, neither paragraph (6)(A) nor paragraph (6)(D) allow a former spouse to rollover the sale proceeds of the property distributed.
 
 
 21
 Paragraph (7) supports this conclusion. Paragraph (7) directs that a surviving spouse be treated like an employee for rollover purposes. Thus, through explicit statutory language, the special rollover rule for proceeds applies with equal force to both employees and surviving spouses. The absence of a similar option under paragraph (6)(F) leads to the natural conclusion that Congress did not intend to extend it to former spouses.
 
 
 22
 For these reasons, we hold that under paragraph (6)(F), an individual desiring to rollover a non-cash distribution must transfer the property itself, not the proceeds from the sale thereof, to a qualifying retirement plan or account. We note that the sparse legislative history of the rollover provisions does not direct a contrary result. Moreover, in recent amendments to the Internal Revenue Code, surviving and former spouses may rollover sale proceeds of distributed stock, thus lending further support to the notion that prior to the amendments, Congress had not extended the rollover option to former spouses.[13]
 
 B.
 
 23
 As just discussed, the only way for plaintiff to have avoided paying capital gains and ordinary income taxes on this distribution would have been if, prior to the sale of the stock, she had rolled over the certificates into an individual retirement account. Once she sold the stock, plaintiff eliminated her ability to shelter this distribution. Therefore, to prevail, plaintiff must show that, but for defendant's breach, she would have deposited the stock certificates themselves in a qualified account and not just the proceeds from the sale of the stock. Based upon our de novo review of the record, we find nothing which establishes this critical fact nor even creates a genuine issue as to this fact. Rather, we hold that defendant has demonstrated a right to judgment as a matter of law inasmuch as the record shows that plaintiff, even if possessed of accurate information, would have sold the stock and attempted to roll over the proceeds into her retirement account. As shown above, such steps would have been ineffective in sheltering her distribution from current taxes.
 
 
 24
 The central portion of the record upon which these conclusions are based is the affidavit of plaintiff, attached as Exhibit BB to her motion for summary judgment. In this affidavit, plaintiff makes the following admissions:
 
 
 25
 7. Affiant intended to avoid or defer any taxes possible on the withdrawal and sale of the Ford stock, and invest the proceeds.
 
 
 26
 * * *
 
 
 27
 * * *
 
 
 28
 9. Affiant and [her financial planner] agreed that she would roll-over to an I.R.A. any proceeds from the sale of the stock permitted by tax law, in order to defer taxes.
 
 
 29
 * * *
 
 
 30
 * * *
 
 
 31
 31. That had Defendant Ford, the plan administrator, provided Affiant with the correct information regarding cost-basis which she ... had requested on many occasions, Affiant would have rolled-over all the proceeds of the stock subject to taxation, and deferred income taxes on the proceeds for more than twenty years.
 
 
 32
 [Emphasis added.] Plaintiff made similar admissions her deposition, in which the following colloquy appears:
 
 
 33
 Q. Had you had this [accurate] statement of distribution in February of 1989, what would you have done differently, if anything?
 
 
 34
 A. I would have rolled over any taxable amount that I would have gotten....
 
 
 35
 * * *
 
 
 36
 * * *
 
 
 37
 Q. ... Would you still have sold the stock?
 
 
 38
 A. Uh-huh. Yes, I would have. Because the market was going to crash.
 
 
 39
 * * *
 
 
 40
 * * *
 
 
 41
 Q. It would be correct that you would have sold the stock--
 
 
 42
 A. I believe that's what I would have done.
 
 
 43
 Q. --in some fashion and rolled over whatever proceeds.
 
 
 44
 A. Yes.
 
 
 45
 These admissions evidence plaintiff's intent to manage the distribution of the stock in the most tax-advantageous way. They also evidence the mistaken belief that it made no difference whether plaintiff worked with the stocks themselves, or merely their proceeds. Thus, even if defendant had provided accurate information, this mistake would have caused her to incur the additional taxes. Because this mistake is in no way attributable to defendant's failure to provide accurate information, the defendant cannot be liable for the additional taxes or loss of investment opportunity.[14] Cf. Warren, 905 F.2d at 982 (holding that under ERISA a beneficiary is entitled to a remedy that puts her in the position she would have been in absent the fiduciary's breach).
 
 III.
 
 46
 For all of the reasons stated, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 29 U.S.C. §§ 1001-1461 (1988 & Supp. III 1991)
 
 
 [2]
 There is no dispute that the order constituted a "qualified domestic relations order" as defined under the Internal Revenue Code. See 26 U.S.C. § 414(p) (1988)
 
 
 [3]
 Because the employee purchases stock every pay period and the market price fluctuates daily, the various shares of stock acquire different bases. For tax law purposes, though, these different bases are averaged on the distribution date and then assigned to each individual share distributed
 
 
 [4]
 See 26 U.S.C. § 402(a)(5)(E)(iv)(I) to (IV) (1988) (current version at 26 U.S.C.A. § 402(c)(8)(B)(i) to (iv) (West Supp.1993)), which allows rollovers to individual retirement accounts, individual retirement annuities, qualified trusts, and annuity plans
 
 
 [5]
 The $9.884 figure represents the average purchase price of the shares distributed to plaintiff from the employee account
 
 
 [6]
 Based upon plaintiff's information at the time of the sale, the capital gain would have been the difference between (1) the sale price of $249,725.40 (4652 shares multiplied by the sale price per share of $53.68) and (2) the cost basis of $247,766.27 (4652 shares of stock multiplied by the fair market value per share at the time of distribution, $53.25)--a capital gain equal to $1,959.13
 
 
 [7]
 The current versions derive from the Unemployment Compensation Amendments of 1992, Pub.L. No. 92-318, § 521(a), 106 Stat. 290, (codified as amended at 26 U.S.C.A. § 402(a)-(f) (West Supp.1993)), and are discussed at greater length at infra n. 13
 
 
 [8]
 Hereinafter, all references in the text of this opinion are to statutory provisions of 26 U.S.C. § 402(a) (1988 and Supp. III 1991) and its various components, unless otherwise indicated
 
 
 [9]
 26 U.S.C. § 402(a)(5) (1988) provides:
 (5) Rollover Amounts.--
 (A) General rule.--If--
 (i) any portion of the balance to the credit of an employee in a qualified trust is paid to him,
 (ii) the employee transfers any portion of the property he receives in such distribution to an eligible retirement plan, and
 (iii) in the case of a distribution of property other than money, the amount so transferred consists of the property distributed,
 then such distribution (to the extent so transferred) shall not be includible in gross income for the taxable year in which paid.
 
 
 [10]
 26 U.S.C. § 402(a)(6)(D)(i) (1988) states:
 (D) Sales of distributed property.--For purposes of subparagraphs (5) and (7)--
 (i) Transfer of proceeds from sale of distributed property treated as transfer of distributed property.--The transfer of an amount equal to any portion of the proceeds from the sale of property received in the distribution shall be treated as the transfer of property received in the distribution.
 
 
 [11]
 26 U.S.C. § 402 (1988 and Supp. III 1991) provides additional rollover rules, but they are not pertinent to this case
 
 
 [12]
 26 U.S.C. § 402(a)(6)(F) (1988) provides:
 (F) Qualified domestic relations orders.--If--
 (i) within 1 taxable year of the recipient, the balance to the credit of the recipient by reason of any qualified domestic relations order (within the meaning of section 414(p)) is distributed or paid to the recipient,
 (ii) the recipient transfers any portion of the property the recipient receives in such distributions to an eligible retirement plan described in subclause (I) or (II) of paragraph (5)(E)(iv), and
 (iii) in the case of a distribution of property other than money, the amount so transferred consists of the property distributed,
 then the portion of the distribution so transferred shall be treated as a distribution described in paragraph (5).
 
 
 [13]
 26 U.S.C. § 402(a) (1988 & Supp. III 1991) has been amended by the Unemployment Compensation Amendments of 1992, Pub.L. No. 92-318, 106 Stat. 290 (codified as amended at 26 U.S.C.A. § 402(a)-(f) (West Supp.1993)), which affects distributions made after December 31, 1992. The 1992 amendments make clear that a former spouse, like a surviving spouse, enjoys the right to rollover either the property distributed or the proceeds of the sale thereof. Specifically, the amendments provide that "[i]f any amount is paid or distributed to an alternate payee who is the ... former spouse of the participant by reason of any qualified domestic relations order ... [the special rollover provision for proceeds] shall apply to such distribution in the same manner as if such alternate payee were the employee." Pub.L. No. 92-318, 106 Stat. 290, § 521(a) (codified as amended at 26 U.S.C.A. § 402(e)-(1)(B) (West Supp.1993)). However, because the 1992 amendments affect distributions occurring after December 31, 1992, they have no bearing on the outcome of this case
 
 
 [14]
 With respect to the stocks distributed from the company matching and dividend accounts only, there is an additional basis to support the conclusion that defendant did not cause plaintiff's claimed damages. As noted above, the mere distribution of these stocks is a taxable event, and the consequent income tax levied is wholly unrelated to the basis. Defendant's breach (i.e., incorrectly reporting the basis), therefore, did not affect plaintiff's income tax liability on the stocks distributed from the company matching and dividend accounts