### Louise ROMBACH, Plaintiff–Appellant,

v.

### NESTLE USA, INC. and Nestle Hourly Employee Retirement Plan, Defendants–Appellees.

### Docket No. 99–7675

United States Court of Appeals, Second Circuit.

Argued: Jan. 7, 2000

Decided: April 28, 2000

Stefan D. Berg, Syracuse, NY, for Plaintiff–Appellant.

Robert E. Rigrish, Ford & Harrison LLP, Atlanta, GA, for Defendants–Appellees.

Before: KEARSE, WALKER, and CALABRESI, Circuit Judges.

CALABRESI, Circuit Judge:

In 1980, Louise Rombach began working for Nestle USA, Inc. at the Nestle Chocolate and Confections plant in Fulton, New York. On June 8, 1993, when she was 33, Rombach left work because of a back injury. She was later placed on medical leave. In March 1995, Rombach applied for a "disability retirement pension" from the Nestle Hourly Retirement Pension Plan ("Pension Plan").[1] Nestle honored Rombach's request and granted her a disability pension after finding that Rombach met the requirements for this type of benefit, principally (1) she had become permanently disabled as a result of the injury to her back and (2) she had over ten years of service to the company. *See* Amendment and Restatement of the Nestle Foods Corporation Pension Plan as the Nestle Hourly Retirement Plan § 5.6, at 24–25 (amended Jan. 1, 1989), *reprinted in* Joint Appendix ("JA") 50a–51a. Rombach, however, argues that the amount granted to her by Nestle was improperly calculated. Nestle gave Rombach $276.00 per month in benefits but she believes that she should receive $1,100.00 per month.

At the center of this dispute is an amendment to the disability retirement pension part of the Pension Plan that was

---

1. In addition to the disability retirement pension, the Pension Plan provides eligible Nestle employees a number of other benefits, including a "normal retirement pension," an "early retirement pension," an "ill-health retirement pension," and a "vested retirement pension."

made in May of 1990. Prior to that date, the disability retirement pension formula provided that the benefit would be

> the amount accrued by the [employee] up to the time he or she ceased to receive Compensation, plus the additional amount he or she would have accrued ... if his or her period of service as an Employee had been extended from the commencement date of such pension up to his or her Normal Retirement Date and if he or she had been paid Compensation during such period at an annual rate equal to one third the total Compensation he or she actually received during the three Plan Years immediately prior to the Plan Year in which he or she ceased to receive Compensation.

*Id.* at 25, *reprinted in* JA 51a. Under this provision, the disability benefit was calculated by giving an employee credit not only for actual service but also for the years that a disabled employee would have worked until normal retirement age. If this formula had been used, Rombach would have been entitled to $1,100 per month.

In May 1990, however, Rombach's union, in its negotiations for a new collective bargaining agreement, agreed to change the manner in which disability retirement pensions were calculated. It accepted an amendment providing that "[t]he disability retirement benefit shall be an amount equal to the normal retirement benefit accrued by the [employee] as of the date of retirement due to disability." Fulton Appendix to the Pension Plan § 2(b), at 77, *reprinted in* JA 64a. Accordingly, after the amendment, disability benefits were computed only on the basis of actual years of service, and there was no constructive credit awarded for the years that a disabled petitioner would have worked but for his or her injury, as there had been under the prior provisions of the plan. Under the new formula, Rombach was entitled to only $276.00 per month.

When Rombach learned that she would be awarded only $276.00 per month, she objected to Nestle's use of the post–1990 formula and asked that her benefits be recalculated. Nestle's Pension Department reviewed its calculations and determined that it had awarded the correct amount. Rombach appealed to the Nestle Employee Benefits Committee, which affirmed the decision granting Rombach $276.00 under the amended formula.

Rombach filed suit in the federal district court. On motions for summary judgment, the district court found that Nestle had not erred in using the post–1990 formula to determine Rombach's disability benefits and granted summary judgment in favor of Nestle.

On appeal, Rombach contends that Nestle violated § 1054(g) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1054(g), by negotiating a significant reduction in disability benefits without following the procedures of § 1082(c)(8) of ERISA, 29 U.S.C. § 1082(c)(8). We disagree and hold that Nestle did not need to comply with the requirements of § 1054(g) (and thus, did not need to comply with those of § 1082(c)(8)) because the disability provisions of the Pension Plan are an "employee welfare benefit plan" under 29 U.S.C. § 1002(1), to which the protections of § 1054 do not apply. We therefore affirm the judgment of the district court.

## ANALYSIS

■ We review the district court's grant of summary judgment in favor of Nestle *de novo*, construing the evidence in the light most favorable to Rombach and drawing all reasonable inferences in her favor. *See, e.g., Brown v. C. Volante Corp.*, 194 F.3d 351, 354 (2d Cir.1999). Rombach's central claim in this litigation is that Nestle was required under ERISA § 1054(g) to follow the procedures of § 1082(c)(8). But under ERISA, in order for § 1054(g) to apply, the disability retirement pension provisions of the Pension Plan must not be an "employee welfare benefit plan" under

§ 1002(1). *See* 29 U.S.C. § 1051(1) (providing that Part Two of ERISA, which includes § 1054(g), does not apply to "an employee welfare benefit plan"); *Harms v. Cavenham Forest Indus., Inc.,* 984 F.2d 686, 691 n. 6 (5th Cir.1993) ("An employer ... may modify or cancel [benefits under a welfare plan] without falling afoul of ERISA."). The first question we must answer, then, is whether the disability provisions at issue here constitute a "welfare plan" under 29 U.S.C. § 1002(1).

ERISA provides protection for two basic types of employee benefit plans. One type of plan is the "employee welfare benefit plan" or "welfare plan." Section 1002(1) defines this type of plan as one that

> was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services.

*Id.* § 1002(1). The other type of protected plan is an "employee pension benefit plan" or a "pension plan." Section 1002(2)(A) defines such a plan as

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—
>
> (i) provides retirement income to employees, or
>
> (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond,

regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

*Id.* § 1002(2)(A).

In this case, Rombach claims that the "disability retirement pension" portion of the Pension Plan should be considered a pension plan under § 1002(2)(A) because Nestle called it a "pension benefit" and made it a part of its master pension plan that included a number of different types of pensions, some of which seemingly satisfy the requirements of § 1002(2)(A). Rombach also argues that the disability retirement pension itself has the required features of a pension plan under § 1002(2)(A).

We are unpersuaded by Rombach's arguments and find the disability provisions of Nestle's Pension Plan to be a welfare plan under § 1002(1). As the language of the statute makes clear, "to the extent" that a plan provides "benefits in the event of ... disability," it is a welfare plan. *Id.* § 1002(1). For this reason, the Sixth Circuit in *McBarron v. S & T Industries, Inc.,* 771 F.2d 94 (6th Cir.1985), held that the disability provisions in a "Masterly Hourly Retirement Plan" constituted a welfare plan even though they were part of a comprehensive retirement plan:

> The wording of Section 1002(1) seems to confirm defendants' position that the Master Hourly Retirement Plan, while not "solely" a disability plan, is an "employee welfare benefit plan" *to the extent that* it provides welfare-type benefits. In our view, the words "to the extent that" rather than "solely" clearly indicate that Congress intended to allow any plan or part of a plan having disability provisions to be considered an "employee welfare benefit plan," and thus be exempt from [the requirements of part 2 of ERISA].

*Id.* at 98; *see also Williams v. Plumbers & Steamfitters Local 60 Pension Plan,* Civ. A. No. 93–3344, 1994 WL 449446, at *2 (E.D.La. Aug.15, 1994) (describing the

holding in *McBarron* as follows: "The court reasoned that the language of the Act—which provides that certain plans are welfare plans 'to the extent' they provide benefits in the event of disability, as contrasted with providing benefits upon reaching an established retirement age—demonstrated Congress'[s] intent that certain portions of comprehensive retirement plans could stand independently as employee welfare benefit plans."), *aff'd*, 48 F.3d 923, 925 (5th Cir.1995) (noting, however, that the plaintiff did not challenge the district court's ruling that the disability portion of the plan was a welfare plan for purposes of ERISA).

Much like the plan in *McBarron*, one portion of Nestle's Pension program before us provides a disability retirement pension for employees who have served the company for over ten years and have become permanently disabled, while other parts grant benefits that relate to retirement generally. In our view, it does not matter that Nestle called the disability retirement pension portion of its plan a "pension benefit" and made it part of its master "pension plan." Its meaning and function remained clear; it was a benefit triggered by disability. And, under the plain language of the statute, "to the extent" that Nestle's Pension Plan provides benefits that are triggered by disability, that portion of the plan is a welfare plan under § 1002(1). As a result, Nestle did not need to comply with § 1054(g) and did not violate ERISA when it modified the Pension Plan in 1990.

Since we have concluded that Nestle did not need to satisfy § 1054(g), our review of Rombach's claim is limited to determining whether Nestle erred in using the 1990 formula when it calculated Rombach's benefit. *See* 29 U.S.C. § 1132(a)(1)(B) ("A civil action may be brought ... by a participant or beneficiary ... to recover benefits due to him [or her] under the terms of his [or her] plan."). The Pension Plan reserved to the Nestle Employee Benefits Committee the "sole discretionary authority for reviewing and resolving claims in accordance with provisions of the [Pension] Plan." Amendment and Restatement of the Nestle Foods Corporation Pension Plan as the Nestle Hourly Retirement Plan § 8.6, at 49 (amended Jan. 1, 1989), *reprinted in* JA 58a. "When an employee benefit plan grants a plan fiduciary discretionary authority to construe the terms of the plan," "[t]he court may reverse only if the fiduciary's decision was arbitrary and capricious." *Miller v. United Welfare Fund*, 72 F.3d 1066, 1070 (2d Cir.1995). Rombach does not claim that her benefits have been improperly calculated under the post–1990 formula that was negotiated by her union. Nor does she dispute that both her injury and her claim for the benefits occurred after 1990. Under the circumstances, we conclude that it was neither arbitrary nor capricious for Nestle to apply the amended terms to Rombach.

## CONCLUSION

Because we hold that the disability provisions of Nestle's Pension Plan were a welfare plan and that Nestle did not act arbitrarily or capriciously in basing Rombach's award on the post–1990 amendment to the plan, the judgment of the district court in favor of Nestle is affirmed.