

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-28-2008

# In Re: Lucent Death

Precedential or Non-Precedential: Precedential

Docket No. 06-5008

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"In Re: Lucent Death " (2008). *2008 Decisions.* Paper 570.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/570

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 06-5008 & 06-5009

IN RE: LUCENT DEATH BENEFITS ERISA LITIGATION

EDWARD FOSS; SARAH CONDER;
ARTHUR J. BERENDT; ROBERT B.
HOWARD,

Appellants (No. 06-5008)

HELEN P. LUCAS, as surviving spouse
of Vincent R. Lucas,

Appellant (No. 06-5009)

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action Nos. 03-cv-05017/04-cv-01099/00640)
District Judge: Honorable Dennis M. Cavanaugh

Argued April 16, 2008

Before: AMBRO, FISHER, and MICHEL,[*] <u>Circuit Judges</u>

(Opinion filed: August 28, 2008)

James R. Malone, Jr., Esquire (Argued)
Kimberly L. Kimmel, Esquire
Chimicles & Tikellis
361 West Lancaster Avenue
One Haverford Centre
Haverford, PA   19041

      Counsel for Appellants
      Edward Foss and Sarah Conder

Alan M. Sandals, Esquire
Scott M. Lempert, Esquire
Sandals & Associates
One South Broad Street
Suite 1850
Philadelphia, PA   19107

Victoria Quesada, Esquire (Argued)
Quesada & Moore
128 Avon Place
West Hempstead, NY   11552

      Counsel for Appellant
      Helen P. Lucas

--------------------------

[*]Honorable Paul R. Michel, Chief Judge, United States Court of Appeals for the Federal Circuit, sitting by designation.

Joseph D. Guarino, Esquire
Epstein, Becker & Green
Two Gateway Center
12th Floor
Newark, NJ   07102

John Houston Pope, Esquire (Argued)
Epstein, Becker & Green
250 Park Avenue
New York, NY   10177

Frank C. Morris, Jr., Esquire
Epstein, Becker & Green
1227 25th Street, N.W., Suite 700
Washington, DC   20037

      Counsel for Appellee

Curtis L. Kennedy, Esquire
8405 East Princeton Avenue
Denver, CO   80237

      Counsel for Amicus-Appellant

OPINION OF THE COURT

AMBRO, <u>Circuit Judge</u>

Former employees of AT&T Corp. ("AT&T") and Lucent Technologies Inc. ("Lucent") appeal the dismissal of their putative class action relating to the termination of a pensioner death benefit provided for in the governing benefit plan. We conclude that this benefit was an unvested welfare benefit and that neither the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461, nor unilateral contract principles prohibited its termination. We thus affirm.

## I.    Factual and Procedural Background

Plaintiffs allege the following. We assume the truth of these facts for the purpose of this appeal of the District Court's order dismissing the complaint for failure to state a claim upon which relief may be granted. *See Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) ("[O]n a Rule 12(b)(6) motion, the facts alleged must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts . . . .").

AT&T adopted a pension and disability benefit plan in 1913. This plan was called the Plan for Employees' Pensions, Disability Benefits and Death Benefits when ERISA was enacted in 1974.

AT&T spun off Lucent in 1996. Lucent assumed the

4

obligation to provide retirement benefits equivalent to those under the AT&T plan to the retirees transferred to Lucent. It created a plan called the Lucent Technologies Inc. Management Pension Plan ("1996 Plan") that expressly incorporated the terms of the AT&T plans. The 1996 Plan included the following provisions:

**Pensioner Death Benefit Amount**

In the event of the death of any person who at the time of death is receiving, or who at the time of death is a former Employee of a Participating Company, is not employed by a Lucent Controlled Group entity, and is eligible to receive, a pension granted under Section 4.1(a) or 4.1(c) of this Plan, the Committee or the BCAC [the Benefit Claim and Appeal Committee], as applicable, in its discretion, but subject to the following provisions of this Section 5.4, may authorize a Death Benefit to the spouse or dependent relatives of the pensioner the total amount of which shall not exceed the maximum amount which could have been paid as a Sickness Death Benefit under the terms of Section 5.3 if the pensioner had died on his or her last day of active service before retirement on pension; provided, however, that in the case of a pensioner who retired after the last day of the month in which the pensioner's Normal Retirement Age

occurred, and whose pension was effective during the period from January 2, 1979 to August 10, 1980, inclusive, the Death Benefit shall not exceed the maximum Sickness Death Benefit which could have been paid if the pensioner had died on the last day of the month in which the pensioner's Normal Retirement Age occurred.

1996 Plan Art. 5.4(a).

**Power to Amend**

The Board of Directors, or its delegate, may from time to time make changes in the Plan as set forth in this document, or terminate said Plan, but such changes or termination shall not affect the rights of any Employee, without his or her consent, to any benefit or pension to which he or she may have previously become entitled hereunder.

1996 Plan Art. 10.1.

Lucent amended its plan in 1997 to eliminate the pensioner death benefit for employees who retired after January 1, 1998. It further amended its plan in February 2003 to eliminate the pensioner death benefit for all management employees then living regardless of the date of retirement.

This litigation followed. Three separate lawsuits were

6

filed in 2003 and 2004 by long-serving AT&T employees who had retired in the 1980s. Edward Foss, Vincent R. Lucas,[1] Arthur J. Berendt, Robert B. Howard, and Sarah A. Conder (collectively, "the pensioners") filed a consolidated amended complaint in the District of New Jersey in November 2005. That complaint included four claims under ERISA and federal common law on behalf of a putative class of pensioners. It alleged that Lucent had terminated the pensioner death benefit unlawfully and sought declaratory and injunctive relief reversing that termination.

The District Court dismissed the complaint in November 2006 for failure to state a claim upon which relief may be granted. It concluded that the plan documents were not ambiguous and therefore extrinsic evidence was not relevant to construing them. It held that the pensioner death benefit was an unvested welfare benefit and that neither ERISA nor unilateral contract principles prohibited its elimination.

The pensioners timely appealed.

## II.    Jurisdiction and Standard of Review

The District Court had jurisdiction under 29 U.S.C.

---

[1]Lucas subsequently died. His widow Helen P. Lucas, an appellant in this case, moved to be substituted as plaintiff. The District Court denied that motion as moot when it dismissed the complaint.

§ 1132(e)(1). We have jurisdiction under 28 U.S.C. § 1291. Our review is plenary. *See Burstein v. Retirement Account Plan for Employees of Allegheny Health & Educ. Research Found.*, 334 F.3d 365, 374 (3d Cir. 2003).

**III.  Analysis**

"ERISA recognizes two types of employee benefit plans: pension plans and welfare plans." *In re. Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 58 F.3d 896, 902 (3d Cir. 1995). Welfare plans provide "medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . . ." 29 U.S.C. § 1002(1). Pension plans provide retirement income to employees or result in a deferral of income by employees for periods extending to the termination of covered employment or beyond. *Id.* § 1002(2)(A).

The distinction between accrual (the rate at which an employee earns benefits to put in the employee's pension account) and vesting (the process by which an employee's already-accrued pension account becomes irrevocably the employee's property) is relevant to the protection of benefits. *See generally DiGiacomo v. Teamsters Pension Trust Fund of Philadelphia & Vicinity*, 420 F.3d 220, 223 (3d Cir. 2005) (quoting *Cent. Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 749 (2004), and discussing accrual and vesting). ERISA provides elaborate requirements for the vesting of pension benefits, but it does not provide automatic vesting of welfare

8

benefits. *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Skinner Engine Co.*, 188 F.3d 130, 137–38 (3d Cir. 1999). An accrued pension benefit is protected by ERISA's anti-cutback provision without any showing that it has vested. *See* 29 U.S.C. § 1054(g) (anti-cutback provision); *In re Fruehauf Trailer Corp.*, 444 F.3d 203, 212 (3d Cir. 2006) ("Under ERISA's 'anti-cutback' provision, benefits accrued in a qualified plan are irrevocable; an administrator or sponsor may not decrease them once they are granted."). In contrast, a welfare benefit is protected from elimination only if the plaintiff proves by a preponderance of the evidence that the plan provider had intended the welfare benefit to have vested (despite not being obliged to do so by ERISA). *See Skinner*, 188 F.3d at 138–39.

The pensioners contend that the pensioner death benefit is an accrued and vested pension benefit that is protected by ERISA from unilateral termination. Lucent, on the other hand, argues that the pensioner death benefit is an unvested welfare benefit that it may terminate unilaterally. *See id.* at 138.

### A. Is the Pensioner Death Benefit a Welfare Benefit or a Pension Benefit?

ERISA defines pension and welfare benefits as follows:

Except as provided in subparagraph (B), the terms "employee pension benefit plan" and "pension plan" mean any plan, fund, or program which was

9

heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—

> (i) provides retirement income to employees, or

> (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond,

regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan. A distribution from a plan, fund, or program shall not be treated as made in a form other than retirement income or as a distribution prior to termination of covered employment solely because such distribution is made to an employee who has attained age 62 and who is not separated from employment at the time of such distribution.

29 U.S.C. § 1002(2)(A).  In contrast:

The terms "employee welfare benefit plan" and

"welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, *death* or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

*Id*. § 1002(1) (emphasis added).

"ERISA's framework ensures that employee benefit plans be governed by written documents and summary plan descriptions, which are the statutorily established means of informing participants and beneficiaries of the terms of their plan and its benefits." *Unisys*, 58 F.3d at 902. We therefore look to the plan documents to interpret plan obligations. *See id.* Extra-ERISA commitments (such as vested welfare benefits) must be found in the plan documents and stated in clear and express language. *Id.* The written terms of a plan control and

11

employers may not modify or supersede them orally. *Id.* When a plan is clear and unambiguous, a court must determine its meaning as a matter of law without looking to extrinsic evidence. *Skinner*, 188 F.3d at 138, 145.

The pensioner death benefit neither provides retirement income to employees nor results in a deferral of income by employees. *See* 29 U.S.C. § 1002(2)(A) (defining pension plan); *see also Oatway v. American Int'l Group, Inc.*, 325 F.3d 184, 189 (3d Cir. 2003) (concluding that a plan that was not "created for the purpose of providing retirement income" was not a pension plan). Moreover, it could not be an accrued pension benefit since it is not "an annual benefit" and it does not "commenc[e] at normal retirement age." *See* 29 U.S.C. § 1002(23); *see generally Bencivenga v. W. Pa. Teamsters & Employers Pension Fund*, 763 F.2d 574, 577 (3d Cir. 1985) (discussing accrued pension benefits). Nor does the pensioner death benefit directly relate to an accrued benefit by paying out an accumulated amount of accrued benefits. *See, e.g.*, *West v. AK Steel Corp.*, 484 F.3d 395, 410–11 (6th Cir. 2007).

Instead, the pensioner death benefit provides "benefits in the event of . . . death." *See* 29 U.S.C. § 1002(1) (defining a welfare plan). This fits readily within the definition of a welfare benefit. As the Second Circuit Court of Appeals has explained, the fact that a welfare benefit appears in a larger plan that also provides pension benefits does not change the character of that welfare benefit. *See Rombach v. Nestle USA, Inc.*, 211 F.3d 190, 193–94 (2d Cir. 2000) (discussing *McBarron v. S & T*

12

*Indus. Inc.*, 771 F.2d 94 (6th Cir. 1985)). As in *Rombach*, the "meaning and function" of the pensioner death benefit "remain[] clear" despite surrounding benefits or the use of the word "Pensioner" to describe the benefit. *See id.* at 194. The 1996 plan language thus identifies the plan as a welfare benefit plan to the extent that it provides the pensioner death benefit. *See generally* 29 U.S.C. § 1002(1).

Nothing in the Summary Plan Descriptions distributed by Lucent suggests otherwise. *See Burstein*, 334 F.3d at 378 (explaining that "where a summary plan description conflicts with the plan language, it is the summary plan description that will control"). The pensioners focus on the following Plan Description language:

> The Plan is classified as both a pension plan and a welfare plan under the Employee Retirement Income Security Act of 1974, as amended (ERISA). It is a defined benefit pension plan for service and deferred vested pension purposes and for the payment of certain sickness death benefits upon the death of a participant under the pension provisions of the Plan. The Plan is a "welfare plan" for purposes of providing disability pensions and certain other death benefits payments.

This passage does not state that the pensioner death benefit is a pension benefit. It merely says, in general terms, that some

13

death benefits are pension benefits and others are welfare benefits. Regardless whether the other death benefits in the plan (the "Accident Death Benefit," and the "Sickness Death Benefit," *see* 1996 Plan Art. 5.2–5.3) are pension benefits, the pensioner death benefit is a welfare benefit and this language in the Plan Description does not change that.

Nor does the asserted fact that the pensioner death benefit has characteristics "consistent with" or "not inconsistent with" a pension benefit change its character. The amount and calculation method of the pensioner death benefit, the identity of the recipient of payment, and the treatment of the pensioner death benefit for tax, accounting, and plan termination purposes, are relevant details for administrators of the plan, but they do not change the fundamental character of the benefit. The type of benefit provided, not other considerations, determines whether a plan is a pension plan or a welfare plan. Indeed, the statutory definition of pension plans specifically states that a plan providing the relevant type of benefits is a pension plan "regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan." 29 U.S.C. § 1002(2)(A). We accordingly will not give weight to these factors in the face of the unambiguous provision of welfare benefits rather than pension benefits.

Any claimed reliance on a belief that the pensioner death benefit is a pension benefit also is irrelevant to the character of the pensioner death benefit. The pensioners identify no

14

authority stating that such detrimental reliance has significance under the facts of this case.

The Lucent plan thus is a welfare plan to the extent that it provides for the pensioner death benefit at issue in this case. No ambiguity in the plan prohibits us from reaching this legal conclusion since the plan language is not "subject to reasonable alternative interpretations." *Taylor v. Cont'l Group Change in Control Severance Pay Plan*, 933 F.2d 1227, 1232 (3d Cir. 1991); *see also In re New Valley Corp.*, 89 F.3d 143, 149 (3d Cir. 1996) (stating that the existence of ambiguity is a question of law).

## B. Is the Pensioner Death Benefit Vested?

Having concluded that the pensioner death benefit is a welfare benefit, we must decide if that benefit had vested prior to its termination. "Employers are generally free . . . [,] for any reason at any time, to adopt, modify or terminate welfare plans." *Skinner*, 188 F.3d at 138 (internal quotation marks omitted; alteration in original). However, they may "relinquish their right to unilaterally terminate those benefits and provide for lifetime vesting." *Id.* "Because vesting of welfare plan benefits constitutes an extra-ERISA commitment, an employer's commitment to vest such benefits is not to be inferred lightly and must be stated in clear and express language." *Id*. at 139.

The pensioner death benefit vests for an eligible mandatory recipient (*i.e.*, becomes unalterably the property of

15

the recipient) "[i]n the event of the death" of a pensioner. 1996 Plan Art. 5.4(a)–(b) (making the otherwise discretionary grant of benefits subject to mandatory beneficiary provisions). It vests for a discretionary beneficiary when, after the death of a pensioner, the plan administrator "in its discretion . . . authorize[s] a Death Benefit." *Id.* Nothing in the plan documents suggests that the pensioner death benefit vests during the life of the pensioner and the plan documents certainly do not state such vesting in clear and express language.

The pensioners nonetheless argue that the pensioner death benefit has vested. They over-read the plan's language, however, to the extent they claim that, by making the payment of death benefits mandatory for certain recipients, the plan vested the pensioner death benefit. Section 5.4 of the plan does incorporate the "Mandatory Beneficiary" section and instructs that payment "shall be made," but the vesting event remains the pensioner's death. Put another way, the pensioner death benefit does not belong irrevocably to living pensioners. The mandatory language merely indicates how the pensioner death benefit should be distributed once death causes the benefit to vest. Moreover, the pensioners do not allege that Lucent failed to pay death benefits that vested (by reason of the death of the pensioner) prior to the termination of the pensioner death benefit.

All this leads to one conclusion: the pensioner death benefit was not vested, meaning that Lucent could terminate it. *See Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 575 (3d Cir.

16

2006) (explaining that vesting does not occur unless "all of the conditions precedent to the employee's receipt of that benefit have been satisfied"); *see also* 1996 Plan Art. 10.1 (reservation of rights clause).

For the same reasons, we conclude that no unilateral contract binds Lucent to providing the pensioner death benefit. Unilateral contract principles are relevant in ERISA cases only "where the asserted unilateral contract is based on the explicit promises in the ERISA plan documents themselves." *Hooven*, 465 F.3d at 573 (internal quotation marks omitted). No such promises appear in these plan documents.

## IV.    Conclusion

The pensioner death benefit, a lump-sum payment made in the event of a pensioner's death, was an unvested welfare benefit that Lucent could terminate without violating ERISA or unilateral contract principles. We thus affirm the decision of the District Court dismissing the pensioners' complaint and denying as moot Helen Lucas' motion to substitute herself in this case for her deceased husband.