Clement BATTONI, Jr.; Raymond Giuliano; James W. Vreeland; Raymond S. Demarco, Jr.; Mark F. Shubiak; Neil Battoni; Charles R. Waller, Appellees in 08–3743 and 09–2030 Cross–Appellants in 08–3924

v.

IBEW LOCAL UNION NO. 102 EMPLOYEE PENSION PLAN; IBEW Local Union No 102 Employee Welfare Fund; John E. McHugh; Richard D. Lessner; Lewis S. Weinstock; Alan M. Golub; Regina Delesky; John Does 1–10; Jane Does 1–10; Trustees of the IBEW Local Union No 102 Employee Pension Plan and/or the IBEW

Local Union No 102 Employee Welfare Fund, as Trustees and Individually, Appellants in 08–3743 and 09–2030 Cross–Appellees in 08–3924.

Nos. 08–3743, 09–2030, 08–3924.

United States Court of Appeals, Third Circuit.

Argued Jan. 12, 2010.

Filed Feb. 5, 2010.

Robert E. Bartkus, (argued), Robert W. Delventhal, Dillon, Bitar & Luther, Morristown, NJ, for Appellees in 08–3743 and 09–2030, Cross–Appellants in 08–3924.

Michael T. Scaraggi, (argued), Oransky, Scaraggi, Borg & Abbamonte, West Caldwell, NJ, for Appellants in 08–3743 and 09–2030, Cross–Appellees in 08–3924.

Before: SCIRICA, Chief Judge,
BARRY, and SMITH, Circuit Judges.

OPINION

SMITH, Circuit Judge.

This appeal requires us to consider the scope of the Employee Retirement Income Security Act's ("ERISA") Anti–Cutback rule, 29 U.S.C. § 1054(g). Certain current and retired members of a union (the "Battoni Plaintiffs") challenged an amendment to their welfare plan (the "Disputed Amendment") as an unlawful cutback of their accrued benefits under their pension plan. We must determine whether the Disputed Amendment, which conditions receipt of healthcare benefits under a welfare plan on non-receipt of an accrued benefit under a pension plan, violates the Anti–Cutback rule. In light of ERISA's statutory text and our precedent, we con-clude that the Disputed Amendment violated the Anti–Cutback rule by constructively amending the pension plan in a manner that decreased an accrued benefit under that plan. Accordingly, we will affirm the District Court's judgment in favor of the Battoni Plaintiffs.

I.

A.

In November 1999, the Local 675 and the Local 102 chapters of the International Brotherhood of Electrical Workers ("IBEW") merged. As a result of the merger, the Local 675 chapter was dissolved and its members were transferred to the Local 102 chapter. The chapters' pension and welfare plans were also combined.

Before the merger, the Local 675 Pension Plan permitted plan participants to choose between a lump sum pension benefit or a periodic monthly benefit. The Local 102 Pension Plan, on the other hand, provided only a periodic monthly benefit to its participants. After the merger, the two pension plans were combined into one—the Local 102 Pension Plan. To accommodate the lump sum pension benefit option that was included in the Local 675 Pension Plan, the Local 102 Pension Plan was amended to provide former Local 675 members the right to receive a lump sum benefit for pre-merger accruals. Post-merger accruals, however, could be applied only towards a periodic monthly benefit.

The chapters' welfare plans were combined by transferring the Local 675 members to the Local 102 Welfare Plan. That plan provided eligible retirees healthcare benefits for themselves and their spouses. To receive these benefits, a retiree was required to satisfy certain conditions outlined in the plan. Shortly after the merger, the Local 102 Welfare Plan was

amended to include a new condition on the receipt of healthcare benefits. This amendment, the Disputed Amendment, conditioned a retiree's receipt of healthcare benefits on the retiree's *not* choosing the lump sum pension benefit offered under the Local 102 Pension Plan. The Disputed Amendment stated, in relevant part, that:

> Retired employees who elect a lump sum pension benefit in lieu of periodic monthly benefits from [the] IBEW Local 102 Pension Plan and/or from another Local Union IBEW Pension Plan shall not be eligible for continued [healthcare] coverage.

Before the addition of the Disputed Amendment, a former Local 675 member could elect to receive the lump sum pension benefit provided under the Local 102 Pension Plan and still receive healthcare benefits under the Local 102 Welfare Plan.

### B.

A group of current and retired members of the Local 102 chapter who were formerly members of the Local 675 chapter, the Battoni Plaintiffs, challenged the Disputed Amendment, alleging, among other things, that it violated the Anti–Cutback rule. The Battoni Plaintiffs filed suit in the United States District Court for the District of New Jersey, naming the Local 102 Pension and Welfare Plans and the current and former trustees of those plans (collectively, the "Union") as defendants.

After a bench trial, the District Court concluded that the Disputed Amendment violated the Anti–Cutback rule and entered judgment in favor of the Battoni Plaintiffs. The Union then filed this timely appeal.[1]

### II.

■ The Union appeals from the District Court's judgment entered after a bench trial. The District Court had jurisdiction over the case under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. When reviewing a judgment entered after a bench trial, we exercise "plenary review over [the] [D]istrict [C]ourt's conclusions of law" and its "choice and interpretation of legal precepts." *Am. Soc'y for Testing & Materials v. Corrpro Cos.*, 478 F.3d 557, 566 (3d Cir.2007) (internal quotations omitted). Findings of fact are reviewed for clear error. *Id.*

### III.

The Anti–Cutback rule states: "The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in section 302(d)(2) or 4281." 29 U.S.C. § 1054(g)(1).[2] To state a claim for violation of ERISA's Anti–Cutback rule one must show (1) that a plan was amended and (2) that the amendment decreased an accrued benefit. *See id.*

The Union concedes that the lump sum pension benefit offered under the Local 102 Pension Plan was an "accrued benefit," 29 U.S.C. § 1002(23). It argues that the Disputed Amendment lawfully amended a

---

1. The Battoni Plaintiffs filed a cross-appeal, arguing that the District Court improperly denied them relief on their other claims against the Union: (1) violation of ERISA's Anti–Interference rule, 29 U.S.C. § 1140, and (2) breach of contract. They also explained that their breach of fiduciary duty claim had not yet been addressed on the merits because they had succeeded on their Anti–Cutback rule claim at trial. Because we are affirming the District Court's judgment, we need not address the Battoni Plaintiffs' cross-appeal.

2. It is undisputed that ERISA sections 302(d)(2), 29 U.S.C. § 1082(d)(2), and 4281, 29 U.S.C. § 1441, do not apply in this case.

**234**

welfare benefit plan—such benefits are exempt from coverage under the Anti–Cutback rule, 29 U.S.C. § 1051(1)—without disturbing the Battoni Plaintiffs' rights to the lump sum pension benefit offered under the Local 102 Pension Plan. This argument cannot succeed in this case.

### A.

■ The first question that must be resolved is whether the Disputed Amendment, by conditioning the receipt of welfare benefits on a retiree not exercising her right to receive a lump sum pension benefit under the Local 102 Pension Plan, constituted an amendment to the Local 102 Pension Plan. *See* 29 U.S.C. § 1054(g)(1). Because the Disputed Amendment constructively amended the right to receive a lump sum pension benefit under the Local 102 Pension Plan, we conclude that the first requirement of an Anti–Cutback claim was satisfied.

### 1.

Our view of what constitutes an "amendment" to a pension plan has been construed broadly to protect pension recipients. *See, e.g., Hein v. FDIC*, 88 F.3d 210, 216 (3d Cir.1996); *accord Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 712 (6th Cir. 2000). That being said, the Union's argument that it did not amend the Local 102 Pension Plan has a certain superficial appeal because welfare and pension plans undoubtedly serve different purposes under ERISA's scheme. The former provide healthcare and unemployment benefits and the latter provide retirement income benefits:

> "ERISA recognizes two types of employee benefit plans: pension plans and welfare plans." *In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 58 F.3d 896, 902 (3d Cir.1995). Welfare plans provide "medical, surgical, or hos-

pital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment[.]" 29 U.S.C. § 1002(1). Pension plans provide retirement income to employees or result in a deferral of income by employees for periods extending to the termination of covered employment or beyond. *Id.* § 1002(2)(A).

*In re Lucent Death Benefits ERISA Litig.*, 541 F.3d 250, 253 (3d Cir.2008). According to the Union, the Disputed Amendment amended the welfare plan and thus was exempted from the Anti–Cutback rule. 29 U.S.C. § 1051(1). The Anti–Cutback rule, however, cannot be employed in such an overly simplistic, robotic fashion.

■ We must examine the Disputed Amendment closely to determine its true character before we declare it solely a welfare plan amendment and exempt from the Anti–Cutback rule. An evaluation of the amendment's benefit characteristics, which are independent of the formal placement of the amendment, is necessary. *See In re Lucent Death Benefits ERISA Litig.*, 541 F.3d at 256. "The type of benefit provided, not other considerations, determines whether a plan [amendment amends a] pension plan or a welfare plan." *Id.; see Rombach v. Nestle USA, Inc.*, 211 F.3d 190, 193–94 (2d Cir.2000).

■ As a general rule, an amendment amends a pension plan "to the extent that by its express terms or as a result of surrounding circumstances … [it] provide[s] retirement income to employees, or … results in a deferral of income by employees for periods extending to the termination of covered employment or beyond[.]" 29 U.S.C. § 1002(2)(A) (defining "pension plan"); *see In re Lucent Death Benefits ERISA Litig.*, 541 F.3d at 255–56; *Rombach*, 211 F.3d at 193–94 (concluding that disability provisions in pension plan constituted a welfare plan); *McBarron v.*

*S & T Indus., Inc.,* 771 F.2d 94, 98 (6th Cir.1985) (holding that disability provision in comprehensive retirement plan constituted a welfare plan). "[T]he words 'to the extent that' rather than 'solely' clearly indicate that Congress intended to allow any plan or part of a plan," *McBarron,* 771 F.2d at 98, to be considered a pension plan *or* a welfare plan, *see id. See also In re Lucent Death Benefits ERISA Litig.,* 541 F.3d at 255; *Rombach,* 211 F.3d at 193. As such, the "meaning and function" of the amendment determines whether it modifies a pension plan, a welfare plan, or both. *In re Lucent Death Benefits ERISA Litig.,* 541 F.3d at 255 (citing *Rombach,* 211 F.3d at 194).

### 2.

The Disputed Amendment is part of the Local 102 Welfare Plan "to the extent" that it pertains to welfare benefits, 29 U.S.C. § 1002(1), *and* part of the Local 102 Pension Plan "to the extent" that it pertains to pension benefits, 29 U.S.C. § 1002(2)(A). *See In re Lucent Death Benefits ERISA Litig.,* 541 F.3d at 255–56; *see also Rombach,* 211 F.3d at 193–94; *McBarron,* 771 F.2d at 98. The Disputed Amendment constructively amended the pension plan by adding a condition to the receipt of a benefit accrued under that plan. If a retiree elects to receive the lump sum pension benefit under the Local 102 Pension Plan she loses healthcare benefits under the Local 102 Welfare Plan. Thus, the Disputed Amendment necessarily, "by its express terms or as a result of surrounding circumstances," 29 U.S.C. § 1002(2)(A), amended the Local 102 Pen-

sion Plan. *See In re Lucent Death Benefits ERISA Litig.,* 541 F.3d at 255–56; *see also Rombach,* 211 F.3d at 193–94; *McBarron,* 771 F.2d at 98. Assuming, hypothetically, that the Local 102 Pension Plan did not exist, an amendment conditioning receipt of healthcare benefits on not receiving accrued benefits under that plan would be nonsensical. Moreover, if the Disputed Amendment were added to the Local 102 Pension Plan instead of the Local 102 Welfare Plan, it would retain the exact same meaning and function. *See In re Lucent Death Benefits ERISA Litig.,* 541 F.3d at 255. Thus, even though the Disputed Amendment was added to the Local 102 Welfare Plan and certainly dealt with healthcare benefits, it also "function[ed]" to condition receipt of the lump sum pension benefit under the Local 102 Pension Plan on non-receipt of healthcare benefits under the Local 102 Welfare Plan. *Id.*[3]

### B.

■ Having determined that the Disputed Amendment amended the Local 102 Pension Plan, the next inquiry is whether the amendment decreased an accrued benefit. *See* 29 U.S.C. § 1054(g)(1). The Union argues that the Disputed Amendment merely restricts access to healthcare benefits and does not decrease any accrued benefit. But because the Disputed Amendment imposed a condition on the receipt of the lump sum benefit under the Local 102 Pension Plan, it decreased an accrued benefit. "[A]t the moment [a] new condition is imposed, the accrued benefit becomes less valuable[.]" *Cent. Laborers' Pension Fund v. Heinz,* 541 U.S. 739, 746,

---

**3.** We have already held that even when there is "no evidence in the record that the actual text of the [pension plan] was amended or modified in any way," a mere "erroneous interpretation of a plan provision that results in the improper denial of benefits to a plan participant may be construed as an 'amend-

ment' for the purposes of [the Anti–Cutback rule]." *Hein,* 88 F.3d at 216. Accordingly, it is no stretch for us to conclude that an amendment to the Local 102 Welfare Plan constructively amended the Local 102 Pension Plan. *See id.; see also In re Lucent Death Benefits ERISA Litig.,* 541 F.3d at 255.

124 S.Ct. 2230, 159 L.Ed.2d 46 (2004). The Treasury Regulations for the Internal Revenue Code ("IRC") provision corresponding to the Anti–Cutback rule further confirm this conclusion. 26 C.F.R. §§ 1.411(d)–4, Q–7, A–7.[4]

1.

In *Central Laborers' Pension Fund*, the Supreme Court considered "whether the [Anti–Cutback] rule prohibits an amendment expanding the categories of postretirement employment that triggers suspension of payment of early retirement benefits already accrued." 541 U.S. at 741, 124 S.Ct. 2230. It held that such an amendment was prohibited in part because the imposition of a new condition on an accrued benefit decreased the value of that accrued benefit. *Id.* at 746, 124 S.Ct. 2230.

Thomas Heinz, a retiree who participated in a pension plan administered by the Central Laborers' Pension Fund, worked in the construction industry before retiring. *Id.* at 741, 124 S.Ct. 2230. Heinz's pension plan contained a "disqualifying employment" provision that stated that monthly retirement payments would be suspended if he accepted work as a "union or non-union construction worker." *Id.* at 742, 124 S.Ct. 2230. The provision did not cover work as a "construction supervisor." *Id.*

After retiring, Heinz began working as a construction supervisor while receiving pension payments. *Id.* Approximately two years later, the pension plan's "disqualifying employment" provision was amended to include any job in the construction industry. *Id.* Heinz was warned that he would lose his monthly pension payment if he continued to work as a construction supervisor. *Id.* Despite the warning, Heinz continued to work as a construction supervisor and his monthly pension payments were suspended because of his ongoing violation of the amended "disqualifying employment" provision. *Id.* Heinz sued the pension fund to recover the suspended benefits, alleging that the amended "disqualifying employment" provision violated the Anti–Cutback rule. *Id.* at 742–43, 124 S.Ct. 2230.

In its defense, the Central Laborers' Pension Fund argued that it did not decrease an accrued benefit because Heinz's monthly pension payments were merely suspended, not outright eliminated.[5] *Id.* at 745, 124 S.Ct. 2230. The Supreme Court explained that the pension fund's distinction between suspension and elimination "misse[d] the point" of the Anti–Cutback rule. *Id.* The imposition of the condition itself was what devalued the accrued benefit:

> The real question is whether a new condition may be imposed after a benefit has accrued; may the right to receive certain money on a certain date be limited by a new condition narrowing that right? In a given case, the new condition may or may not be invoked to justi-

**4.** "Regulations prescribed by the Secretary of the Treasury under [section 411 of the IRC] apply to the minimum participation, vesting, and funding standards set forth in [ERISA]." *Bellas v. CBS, Inc.*, 221 F.3d 517, 523 n. 3 (3d Cir.2000) (quoting 29 U.S.C. § 1202(c)). "Accordingly, the ... [Anti–Cutback rule,] and [section 411 of the IRC] are meant to be interpreted consistently." *Bellas*, 221 F.3d at 523 n. 3; *see id.* at 524 n. 5 (citing 26 C.F.R. § 1.411(d)–4); *Cent. Laborers' Pension Fund,*

541 U.S. at 747, 124 S.Ct. 2230 ("Although the [Treasury Regulations] refer only to the [IRC] version of the anti-cutback rule, they apply with equal force to [ERISA's Anti–Cutback rule].").

**5.** The Central Laborers' Pension Fund also raised other arguments not relevant to the instant case.

fy an actual suspension of benefits, but *at the moment the new condition is imposed, the accrued benefit becomes less valuable, irrespective of any actual suspension.* *Id.* at 746, 124 S.Ct. 2230 (emphasis added).

The same reasoning applies here. The Local 102 Pension Plan, like Heinz's pension plan, imposed a new condition on the receipt of an accrued benefit. The Battoni Plaintiffs' lump sum pension benefits accrued before the Disputed Amendment was added to the Local 102 Welfare Plan. Yet the Disputed Amendment conditioned the receipt of those accrued benefits on forfeiting healthcare benefits. This "new condition," *id.*, in and of itself, decreased the value of the lump sum pension benefit, *see id.*

### 2.

The Treasury Regulations for the IRC's counterpart to ERISA's Anti–Cutback rule bolster our conclusion. Those regulations direct us to construe broadly the Anti–Cutback rule to cover direct and indirect amendments to pension plans.[6] The Treasury Regulations state that the imposition of conditions on accrued benefits violates the Anti–Cutback rule:

> Q–7: May a plan be amended to add ... conditions restricting the availability of a

section 411(d)(6) [the IRC's provision corresponding to ERISA's Anti–Cutback rule] protected benefit?

A–7: No. The addition of ... objective conditions with respect to a section 411(d)(6) protected benefit that has already accrued violates section 411(d)(6). Also, the addition of conditions (whether or not objective) or any change to existing conditions with respect to section 411(d)(6) protected benefits that results in any further restriction violates section 411(d)(6).

26 C.F.R. §§ 1.411(d)–4, Q–7, A–7; *Cent. Laborers' Pension Fund*, 541 U.S. at 747, 124 S.Ct. 2230 ("So far as the [Treasury] [R]egulations are concerned, ... the anti-cutback provision flatly prohibits plans from attaching new conditions to benefits that an employee has already earned.").

### IV.

The Disputed Amendment constructively amended the pension plan because it conditioned receipt of the lump sum pension benefit, an accrued benefit, on surrendering healthcare benefits provided by the welfare plan. *See* 29 U.S.C. § 1002(2)(A); *see also In re Lucent Death Benefits ERISA Litig.*, 541 F.3d at 255–56. This condition on the receipt of the lump sum pension benefit decreased the value of that benefit in violation of the Anti–Cutback

---

**6.** *See, e.g.*, 26 C.F.R. § 1.411(d)–3(a)(2)(i) ("For purposes of determining whether a participant's accrued benefit is decreased, all of the amendments to the provisions of a plan affecting, directly or indirectly, the computation of accrued benefits are taken into account."); *id.* § 1.411(d)–3(b)(1)(ii) (explaining that Anti–Cutback rule applies to benefits that can only be realized through the occurrence of an "unpredictable contingent event"); *id.* § 1.411(d)–4, A–2(a)(1) ("[In general, a] plan is not permitted to be amended to eliminate or reduce a section 411(d)(6) protected benefit that has already accrued, ... even if such elimination or reduction is contingent upon the employee's consent."); *id.* § 1.411(d)–4, A–2(a)(3)(i) ("The prohibition against the reduction or elimination of section 411(d)(6) protected benefits already accrued applies to plan mergers, spinoffs, transfers, and transactions amending or having the effect of amending a plan or plans to transfer plan benefits."); *id.* § 1.411(d)–4, A–2(c)(1) ("A plan amendment violates the requirements of section 411(d)(6) if it is one of a series of plan amendments that, when taken together, have the effect of reducing or eliminating a section 411(d)(6) protected benefit in a manner that would be prohibited by section 411(d)(6) if accomplished through a single amendment.").

rule. *See Cent. Laborers' Pension Fund,* 541 U.S. at 746, 124 S.Ct. 2230; *see also* 26 C.F.R. §§ 1.411(d)–4, Q–7, A–7. Thus, we will affirm the District Court's judgment that the Disputed Amendment violated ERISA's Anti–Cutback rule.

