NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 14-2649, 14-2761
_____

JANE E. ADKINS,
                              Appellant in 14-2649

v.

JOHN B. SOGLIUZZO, Esq.; DEUTSCHE BANK;
ALEX BROWN; H. THOMPSON RODMAN; L. GAYE TORRANCE;
TD BANK, N.A.; HAVEN SAVINGS BANK

JOHN B. SOGLIUZZO,
                              Appellant in 14-2761
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civ. Action No. 2-09-cv-01123)
District Judge: Honorable Susan D. Wigenton
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 26, 2015
_____

Before: GREENAWAY, JR., KRAUSE, and GREENBERG, *Circuit Judges*.

(Opinion Filed: August 10, 2015)

_____

GREENAWAY, JR., *Circuit Judge*.

This appeal arises from a diversity action in which Jane Adkins, Plaintiff/Appellant/Cross-Appellee ("Adkins"), sued her brother John Sogliuzzo, Defendant/Appellee/Cross-Appellant ("Sogliuzzo"), his wife Gaye Torrance ("Torrance"), and several banks, including Haven Savings Bank ("Haven"), based upon Sogliuzzo's allegedly unlawful mismanagement of the finances of their mother Jane Sogliuzzo and Mary Grimley ("Grimley"), their mother's first cousin. Adkins brought dozens of claims against Defendants including breach of fiduciary duty, malicious representation, intentional infliction of emotional distress, conversion, fraudulent concealment, fraud, and conspiracy.

The District Court granted summary judgment to Haven, concluding that no special relationship existed between Haven and Adkins, based upon her status as a beneficiary of Grimley.[1] The District Court also granted partial summary judgment to Sogliuzzo on the claim of undue influence over Jane Sogliuzzo on res judicata grounds, based upon the outcome of a prior state court action concerning the same issues.

Following a five-day bench trial, the District Court issued Findings of Fact and Conclusions of Law, in which it found that: (1) Torrance was not liable in this matter; (2)

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.
[1] Adkins was named as a beneficiary of Grimley's estate in Grimley's will.

2

Sogliuzzo was liable for undue influence over Jane Sogliuzzo; however, because Adkins did not demonstrate grounds for damages beyond the judgment already made against Sogliuzzo in a state court proceeding, no further damages would be awarded; (3) Adkins failed to establish that her health issues were proximately caused by Sogliuzzo's actions, thus her intentional infliction of emotional distress claims failed; (4) Sogliuzzo was liable for undue influence, breach of fiduciary duty, negligence, fraud and misrepresentation with respect to Grimley and the Grimley estate, but the District Court deferred to the probate court's determinations regarding the calculation of damages; however, the District Court did not make clear the basis for this deferral; and (5) Adkins failed to establish conspiracy, conversion, waste of inheritance, or punitive damages.

On appeal, Adkins argues that the District Court (1) erred in not awarding damages, despite finding Sogliuzzo liable; (2) made factual errors and failed to address all claims related to Torrance; (3) erred regarding several evidentiary rulings, including excluding Torrance's deposition testimony and barring the testimony of both Adkins's accounting expert and of Charles Adkins, Adkins's husband, regarding his review of financial documents; and (4) erred in granting summary judgment to Haven.

On cross-appeal, Sogliuzzo argues that the District Court erred by (1) drawing an adverse inference against him for invoking his Fifth Amendment right not to testify; (2) not entering a judgment of "no cause" against him when the Court found that Adkins's proof was insufficient to award damages; (3) not dismissing Adkins's claims

3

under a theory of "unclean hands"; and (4) not granting partial summary judgment to him on res judicata grounds based upon prior state court decisions.

For the following reasons, we will affirm the District Court's judgment in part, and reverse and remand in part.

## I. BACKGROUND

Adkins and Sogliuzzo are both beneficiaries of the estates of Jane Sogliuzzo and Grimley. Grimley died in 2006 at 91 years old, and Jane Sogliuzzo died in 2008 at 93 years old. Sogliuzzo was the executor of both Jane Sogliuzzo's and Grimley's estates. Prior to their deaths, Sogliuzzo, an attorney, managed banking and finances for both Grimley and Jane Sogliuzzo, and held a power of attorney for Grimley's accounts at Haven.

In 2002, Adkins, her husband Charles Adkins, Sogliuzzo, and his wife, Torrance, all assisted Grimley when she moved out of her home; during this process, they recovered approximately $70,000 in cash from various parts of the home. Sogliuzzo and Adkins informed Grimley that this cash had been found, and Sogliuzzo said he would deposit it into Grimley's Haven account. From 2004 to 2006, $321,040.05 in bonds were redeemed from Grimley's accounts at Haven Bank. Adkins alleges that some of these funds were deposited into accounts shared by Sogliuzzo and his wife, Torrance. Checks drawn on Grimley's account made out to Torrance were also deposited into Sogliuzzo and Torrance's joint account.

4

Following Grimley's death in 2006, Adkins received disbursements that she believed were significantly less than she should have received. Following Jane Sogliuzzo's death in 2008, Sogliuzzo informed Adkins that Jane Sogliuzzo had about $14,000 in assets in addition to her home, and that her investment accounts would be paid out to Sogliuzzo. Adkins expressed her concerns to Sogliuzzo that there were irregularities in the accounts and estate of Jane Sogliuzzo. During the summer of 2008, Sogliuzzo gave up his position as executor of both estates, and Adkins was appointed executor of the estates.

In September 2008, Adkins, acting as executor of Jane Sogliuzzo's estate, sued Sogliuzzo in the Superior Court of New Jersey, Chancery Division, Probate Part, Hudson County, alleging that Sogliuzzo had exerted undue influence over Jane Sogliuzzo. The state court struck Sogliuzzo's answer based on unresponsiveness after he invoked his Fifth Amendment right not to testify. Following proof hearings, the state court found that Sogliuzzo had exerted undue influence over Jane Sogliuzzo and entered judgment for $520,414 against Sogliuzzo and in favor of the Estate of Jane Sogliuzzo. The state court also awarded close to $200,000 in legal fees and costs. The judgment was affirmed on appeal.[2]

---

[2] Adkins, acting as executor of Grimley's estate, filed a similar action concerning that estate in the same court. That case is now stayed pending the resolution of the instant lawsuit.

**II. ANALYSIS**[3]

    **A. Summary Judgment**[4]

        **1. Res Judicata**

Sogliuzzo argues that, with regard to the claims related to the estate of Jane Sogliuzzo, the District Court erred in its denial of summary judgment on res judicata grounds. However, Sogliuzzo prevailed on these claims at trial. In its post-trial opinion, the District Court found that "Plaintiff neither demonstrated nor supported a basis to provide additional grounds for liability or damages in excess of [the final judgment against Sogliuzzo in state court] regarding the Estate of Jane [Sogliuzzo]." (App. 92.) Although Sogliuzzo's attempt to make an argument on appeal regarding a claim on which he prevailed at trial is puzzling, we need not reach the merits of this argument because the denial of summary judgment is not appealable. The Supreme Court instructs that an order denying summary judgment "retains its interlocutory character as simply a step along the route to final judgment." *Ortiz v. Jordan*, 562 U.S. 180, 184 (2011) ("Once the

---

[3] The District Court had jurisdiction under 28 U.S.C. § 1332. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

[4] "We review a district court's grant of summary judgment de novo, applying the same standard as the district court." *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 256 (3d Cir. 2013).

6

case proceeds to trial, the full record developed in court supersedes the record existing at the time of the summary-judgment motion.").  Because the claims concerning Sogliuzzo's liability and damages regarding Jane Sogliuzzo went to trial, the order denying summary judgment is a nonappealable interlocutory order and not subject to appeal.

### 2. Claims Against Haven Bank

Adkins asserted that Haven permitted Sogliuzzo to make withdrawals from Grimley's accounts and to redeem savings bonds in Grimley's name, both to her detriment.  As a result, Adkins brought claims seeking damages against Haven for negligence, gross negligence, and breach of fiduciary duty.  The District Court found for Haven at summary judgment, holding that Haven owed no duty to Adkins under New Jersey common law because Haven had no special relationship with Adkins.

"The question of whether a duty exists is a matter of law to be decided by the court." *City Check Cashing, Inc. v. Mfrs. Hanover Trust Co.*, 764 A.2d 411, 416 (N.J. 2001) (citations omitted).  "In actions based on nonfeasance . . . 'it is necessary to find some definite relation between the parties, of such a character that social policy justifies the imposition of a duty to act.'" *Id.* at 416-17 (quoting W. Page Keeton et al., *Prosser & Keeton on Torts* § 56 at 374 (5th ed. 1984)).  "Absent a special relationship, courts will typically bar claims of non-customers against banks." *Id.* at 417.

7

Here, it is undisputed that Adkins was not a customer of Haven.  She attempts to establish the existence of a special relationship with Haven as a beneficiary of the Grimley estate, but provides no authority to support this contention, nor have we located any.  Thus, Haven owed no duty to Adkins, and her common law claims must fail.[5]

**B. Bench Trial**[6]

**1. Claims Against Torrance**

Adkins argues that the District Court made factual errors and failed to address all claims with respect to Torrance in the Findings of Fact and Conclusions of Law issued after the bench trial.  Adkins first argues that the District Court failed to address claims against Torrance concerning Jane Sogliuzzo.  However, these claims did not survive summary judgment; thus, there was no need for the District Court to address these claims in its post-trial opinion.  Adkins also argues that the District Court made factual errors with respect to Grimley and Jane Sogliuzzo.  The District Court did misstate that the $20,000 check from Grimley to Torrance was for her children's tuition.  While the record

[5] Adkins's arguments that Haven failed to follow proper procedures in redeeming Grimley's savings bonds are similarly unsuccessful.  Adkins, a non-bondholder, does not have a private cause of action for violation of such procedures.  *See Flowers v. United States*, 75 Fed. Cl. 615, 631 (2007), *aff'd,* 321 F. App'x 928 (Fed. Cir. 2008) ("If a plaintiff is not the registered owner, then the plaintiff is not in privity of contract with the government and lacks standing to recover on the savings bonds." (citation omitted)).

[6] "When reviewing a judgment entered after a bench trial, we exercise plenary review over the District Court's conclusions of law and review the District Court's findings of fact for clear error." *CG, et al. v. Pa. Dep't of Educ.*, 734 F.3d 229, 234 (3d Cir. 2013) (citing *Battoni v. IBEW Local Union No. 102 Emp. Pension Plan*, 594 F.3d 230, 233 (3d Cir. 2010)).

shows that Jane Sogliuzzo rather than Grimley gave Torrance a check for school tuition, Adkins has not shown that this error impacted, or indeed was relevant to, the resolution of the claims against Torrance at trial.[7]

The remaining counts against Torrance all concern Grimley and include Aiding the Commission of a Tort, Conspiracy to Commit Tort, and Undue Influence on Inter Vivos Transfers. At trial, Torrance testified that the only check she received from Grimley was one $20,000 gift, which she saw Grimley sign and which she deposited into her bank account. The District Court determined that Torrance's testimony was credible. Adkins also alleged that Torrance was aware of and conspired in Sogliuzzo's redemption of $300,000 in U.S. Savings Bonds belonging to Grimley, but the Court determined that "no evidence was presented to show culpability by Torrance regarding the disposition of the bonds or their redemption." (App. 89.)

Indeed, upon examination of the trial record, it is clear that Adkins failed to establish the requisite "reasonable connection" between any of Torrance's actions and the alleged damages suffered by Grimley. *See Shackil v. Lederle Labs., a Div. of Am. Cyanamid Co.*, 561 A.2d 511, 514-15 (N.J. 1989) (internal quotation marks omitted).

---

[7] Appellant also notes the District Court's misstatement that Grimley was predeceased by her husband and child, when apparently she was never married and had no children. This fact is neither relevant nor material to the claims at issue here, and it need not be addressed.

With respect to conspiracy to commit a tort, Adkins similarly failed to establish "a real agreement or confederation with a common design" with "the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 (3d Cir. 2003) (internal citation omitted).

Finally, Adkins's evidence at trial was insufficient to establish undue influence over an inter vivos transfer. On appeal, Adkins merely puts together portions of Torrance's testimony suggesting a close and familial relationship between Torrance and Grimley, but demonstrates neither that a confidential relationship existed, nor that Torrance exerted undue influence over the $20,000 gift.[8] *See In re Niles*, 823 A.2d 1, 4-6, 10 (N.J. 2003) (defining undue influence in the trust context as "mental, moral or physical exertion which has destroyed the free agency of a [donor] by preventing the [donor] from following the dictates of his own mind and will and accepting instead the domination and influence of another," and describing a situation that meets these criteria where an elderly woman suffering from dementia named her step-nephew as her trustee based on an incorrect understanding of his professional position and experience, and after

_____

[8] Adkins argues that the burden was on Torrance to demonstrate that she did not exert undue influence over Grimley concerning the $20,000 gift because of the confidential relationship that Torrance and Grimley shared. However, the District Court found that "Torrance was not in a confidential relationship with Grimley," and that Adkins had "not demonstrated that Torrance exercised undue influence for this single conveyance of funds." (App. 89.)

10

which, her will was altered to leave hundreds of thousands of dollars to her step-nephew's family, and her step-nephew spent tens of thousands of dollars from her estate on cars, jewelry and other items) (internal citations and quotation marks omitted).

Because Adkins fails to show that the District Court erred in ruling for Torrance on any of the claims against her, we will affirm the District Court's judgment regarding those claims.

### 2. Adverse Inference Against Sogliuzzo

Sogliuzzo appeals the District Court's grant of Adkins's application for an adverse inference against him, based upon Sogliuzzo's invocation of his Fifth Amendment privilege against self-incrimination. "The privilege against self-incrimination may be raised in civil as well as in criminal proceedings and applies not only at trial, but during the discovery process as well." *SEC v. Graystone Nash, Inc.*, 25 F.3d 187, 190 (3d Cir. 1994). However, "[u]nlike the rule in criminal cases . . . reliance on the Fifth Amendment in civil cases may give rise to an adverse inference against the party claiming its benefits." *Id.* "Use of the privilege in a civil case may . . . carry some disadvantages for the party who seeks its protection" because "invocation of the Fifth Amendment poses substantial problems for an adverse party who is deprived of a source of information that might conceivably be determinative in a search for the truth." *Id.*

"The Supreme Court has cautioned that the Constitution limits 'the imposition of any sanction which makes assertion of the Fifth Amendment privilege costly.'" *Id.*

11

(quoting *Spevack v. Klein*, 385 U.S. 511, 515 (1967)). However, "[t]he principle that the invocation of the privilege may not be too 'costly' does not mean that it must be 'costless.'" *Id.* at 191. Indeed, the Supreme Court has held that "it was permissible to draw 'adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them.'" *Id.* (quoting *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)). Ultimately, the "trial court must carefully balance the interests of the party claiming protection against self-incrimination and the adversary's entitlement to equitable treatment. Because the privilege is constitutionally based, the detriment to the party asserting it should be no more than is necessary to prevent unfair and unnecessary prejudice to the other side." *Id.* at 192.

Here, Sogliuzzo invoked his Fifth Amendment privilege, and did not provide any testimony during discovery or throughout trial regarding any of the claims at issue in this litigation. Sogliuzzo invoked the privilege because Adkins had filed a criminal complaint with the Hudson County prosecutor and had contacted the Secret Service regarding the events at issue in this lawsuit. The District Court heard argument on this issue prior to trial, and, after trial, determined that an adverse inference was proper. Although the District Court did not clearly set out its reasoning, "[w]e may affirm the District Court on any grounds supported by the record." *Nicini v. Morra*, 212 F.3d 798, 805 (3d Cir. 2000) (citation omitted). We agree that the "circumstances of [this] particular litigation" do not create a situation in which granting an adverse inference creates a detriment that is too

12

"costly" for Sogliuzzo. *Graystone Nash,* 25 F.3d 187 at 191-92. Indeed, at trial, he was "not prevented from presenting evidence to the factfinder to support his . . . position even in the absence of [his] testimony." *Id.* at 191. Thus, we affirm the District Court's grant of an adverse inference against Sogliuzzo.

### 3. Unclean Hands

Sogliuzzo argues that the District Court erred in ruling that the doctrine of unclean hands did not prohibit Adkins from recovery. "As an equitable doctrine, application of unclean hands rests within the sound discretion of the trial court." *In re New Valley Corp.,* 181 F.3d 517, 525 (3d Cir. 1999). "Only when 'some unconscionable act of one coming for relief has immediate and necessary relation to the equity that' the party seeks, will the doctrine bar recovery." *Id.* (quoting *Keystone Driller Co. v. Gen. Excavator Co.,* 290 U.S. 240, 245 (1933)). Sogliuzzo asserts that Adkins willfully depleted Jane Sogliuzzo's estate through payments to attorneys and her husband's consulting firm. He also argues that testimony and evidence of checks written by Adkins, acting as executor of the estate, to her husband's firm soon after she became executor are sufficient to meet the standard for unclean hands. However, the evidence Sogliuzzo presented at trial failed to meet this standard. As the District Court noted, although it was "disturbed" by Adkins's spending as executor of Jane Sogliuzzo's estate, "Sogliuzzo did not demonstrate that Plaintiff's conduct was willful." In addition, Sogliuzzo did not show that Adkins

13

acted unconscionably. We will affirm the District Court's determination that Adkins was not barred from recovery under the doctrine of unclean hands on that ground.[9]

### 4. Evidentiary Rulings[10]

Adkins also challenges the District Court's rulings during trial regarding the admission of deposition transcripts and testimony.

### a. Torrance's Deposition Transcripts

Adkins asserts that the District Court abused its discretion in excluding Torrance's deposition testimony. The District Court permitted Torrance to testify twice at trial, notwithstanding the fact that this is "not customarily done," precisely because her deposition transcripts were not going to be admitted. (Torrance Supp. App. 12-13.) The District Court is not required to admit deposition testimony, and is certainly not required to do so when the live witness is not only available but also testified twice *during* the trial. *See generally* Fed. R. Civ. P. 32(a). Here, the District Court was well within its discretion in not permitting the admission of Torrance's deposition transcripts.

### b. Testimony of Adkins's Accounting Expert

Adkins also argues that the District Court abused its discretion in not permitting the testimony of her accounting expert, Meghan Callen, because the records on which she

---

[9] "We may affirm the District Court on any grounds supported by the record." *Nicini*, 212 F.3d at 805 (citation omitted).

[10] "We review the District Court's evidentiary rulings principally for abuse of discretion." *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 412 (3d Cir. 2002) (citations omitted).

would have based her testimony had not been authenticated, and the Court could neither verify the source nor the completeness of these documents. Adkins also argues that all parties agreed in the final pretrial order that the documents at issue were admissible. This argument fails because each party expressly reserved the right to object at trial to the admission of any exhibits, and there was no stipulation concerning the admissibility of certain exhibits. The District Court did not abuse its discretion in disallowing evidence, or testimony based upon evidence, the authenticity, source, and completeness of which could not be verified.

### c. Testimony of Charles Adkins

Adkins challenges the District Court's trial rulings barring certain testimony from Charles Adkins as improper expert testimony from a lay witness. Charles Adkins is the husband of Plaintiff Jane Adkins, and his firm Adkins and Company had been retained by Jane Adkins to provide consulting services when she became executor of Jane Sogliuzzo's estate. Pursuant to Federal Rule of Evidence 701, as a lay witness, Charles Adkins was only permitted to testify to facts about which he had personal knowledge, and the District Court prohibited him from offering expert testimony. Jane Adkins does not dispute Charles Adkins's status as a lay witness, and it was within the discretion of the District Court to prohibit certain testimony concerning analysis of Sogliuzzo's financial records as beyond the scope of a lay witness.

**C. Damages**

The District Court found Sogliuzzo "liable for claims related to undue influence, breach of fiduciary duty, negligence, fraud, and misrepresentation," but "defer[red] to the probate court's ultimate determinations regarding the appropriate calculations in the Grimley State Court Case." (App. 94.) Although the District Court "acknowledge[d] that Sogliuzzo's relationship with Grimley [met] the definition of a confidential relationship," and "accept[ed] that there were irregularities with the redemption of [Grimley's savings] bonds," it concluded that Adkins failed "to demonstrate that these bonds were deposited or used by Sogliuzzo." (App. 95.) With respect to the $70,000 cash found in Grimley's home, although noting that "the inference of mismanagement or misuse is evident," the Court again found that Adkins "did not demonstrate that Sogliuzzo retained the cash for personal use or misappropriated the funds." (App. 96.) Ultimately, the Court found that "[t]he evidentiary support to calculate damages for this claim was insufficient at trial," and "defer[red] to the state probate court" to determine damages. *Id.* On appeal, Adkins argues that the Court was required to find damages after it found liability. On cross-appeal, Sogliuzzo argues that because the Court found that Adkins's proof was insufficient to award damages, it should have entered a judgment of "no cause" against him.

There is no basis for the deferral that the District Court references. Where, as here, an issue is properly before the District Court, it should decide that issue. *See In re*

16

*Semcrude, L.P.*, 728 F.3d 314, 326 (3d Cir. 2013) ("As the Supreme Court has instructed on numerous occasions, 'federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress.'" ) (quoting *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716 (1996) (collecting cases)).[11] Because the District Court found liability but deferred to the state court's findings with respect to damages, we reverse and remand to the District Court to make explicit findings with respect to damages in this action. *See E. C. Ernst, Inc. v. Koppers Co.*, 626 F.2d 324, 329 (3d Cir. 1980) (remanding where "the district court's opinion ha[d] the effect of finding liability with no damages," this Court remanded because "the district court should, in the first instance, consider this record and make additional findings of fact and conclusions of law on damages").

**III. CONCLUSION**

For the foregoing reasons, we will affirm the District Court's judgment with respect to liability, and reverse and remand for the District Court to make a determination with respect to damages.

---

[11] If after a hearing, the District Court concludes that insufficient evidence has been presented to support damages, such a finding is not inconsistent with a finding of liability. *See Carpet Grp. Int'l v. Oriental Rug Importers Ass'n*, 173 F. App'x 178, 180 (3d Cir. 2006) (affirming the district court's determination not to reverse a jury verdict finding defendants committed antitrust violations, but had not caused injury to plaintiffs).